STATE of Rhode Island,

v.

Robert J. BJERKE.

No. 96–283–M.P.

Supreme Court of Rhode Island.

July 1, 1997.

Aaron Weisman, Providence, Matthew C. Womble, for Plaintiff.

Kathleen Wyllie, David E. Revens, Warwick, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

BOURCIER, Justice.

This matter is before the Court pursuant to our order granting the state's petition for writ of certiorari. The state asks this Court to review a decision of the Administrative Adjudication Court Appeals Panel in which that court affirmed the decision of an administrative judge dismissing a violation issued against the defendant for refusal to submit to a chemical test pursuant to G.L.1956 § 31–27–2.1. The state contends that the Appeal Panel's decision contravenes traditional constitutional standards of law pertaining to search and seizure. We agree and quash the Appeal Panel's decision.

I

On April 27, 1995, at approximately 4 p.m., the Warwick police station received an anonymous telephone call reporting that the operator of a tan-colored Oldsmobile bearing license-plate number TV–536 was traveling on Airport Road near Post Road and was possibly intoxicated. On the basis of that call, a Warwick police officer was dispatched to investigate. While that officer was en route, a dispatcher at the Warwick police station checked the license-plate number of the reported vehicle and discovered that the vehicle registration had been suspended; the vehicle was in fact being driven in violation of G.L.1956 § 31–8–2. The investigating officer was informed of the suspension information.

Upon arriving at the Post Road area, the investigating officer located and stopped a tan-colored vehicle bearing the license-plate number TV–536. The officer, prior to stopping the vehicle, did not observe any erratic driving. However, having notice of the suspended registration for the vehicle, the officer approached the vehicle and asked the operator, Robert J. Bjerke (Bjerke or defendant) for his license, registration, and insurance. A check of Bjerke's driver's license revealed that it had been previously suspended. The officer then asked Bjerke where he was coming from and to where he was going. Bjerke indicated that he had just left work and was heading home. While speaking to Bjerke, the officer detected the odor of alcohol and noticed that Bjerke's speech was slurred and somewhat confused. Consequently he asked Bjerke to exit the vehicle to perform certain field sobriety tests. Bjerke complied, failed the tests, and was then placed under arrest for operating a motor vehicle, the registration of which had been previously suspended; for operating a vehicle after his license to do so had been previously suspended; and for suspicion of operating a vehicle while under the influence of alcohol. Bjerke was advised at the scene of his constitutional rights and transported to the Warwick police station.

At the Warwick police station Bjerke was asked to submit to a chemical breath test, which he refused. He was then issued a Z-series violation for operating a motor vehicle after his license to do so had been suspended, in violation of G.L.1956 § 31–11–18, and an Administrative Adjudication Court (AAC) violation for operating a motor vehicle after its registration had been suspended in violation of § 31–8–2. He was also charged with refusing to submit to a chemical test in violation of § 31–27–2.1.

A hearing on the charges took place before a trial judge in the AAC on November 15, 1995, at which time the trial judge found Bjerke guilty on the charge of operating a vehicle after its registration had been suspended but dismissed the violation charging Bjerke with refusing to submit to a chemical test. The judge concluded that the police officer, in stopping the vehicle Bjerke was driving, did not have reasonable suspicion to justify a stop in order to investigate for driver intoxication. The trial judge did find, however, that reasonable suspicion had existed to justify the officer's stop on the basis of the suspended registration.

The state appealed the trial judge's dismissal of the breathalyzer refusal charge, and Bjerke appealed the decision sustaining the charge of operating a vehicle after its registration had been suspended. Both appeals were heard before an AAC Appeals Panel (the panel).

The panel affirmed the AAC trial judge's decision. In a per curiam decision, the panel reasoned that in the absence of other evidence, the anonymous telephone tip was insufficient to trigger reasonable suspicion to stop the vehicle to investigate for intoxication. *See Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). The panel agreed with the trial judge that the state was required to produce additional independent evidence to corroborate the information given by the anonymous telephone caller before the police could have the requisite reasonable suspicion to perform an investigatory stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Following the panel's decision, the state petitioned this Court for the writ of certiorari, which we granted on June 27, 1996.

The question posed to us by the state's petition requires an examination of the Fourth Amendment to the United States Constitution and its state analogue found in article 1, section 6 of the Rhode Island Constitution.

## II

■ It is well established that whenever a person is detained by state authorities, even if briefly, the Fourth Amendment is implicated and the detention must be in conformance with the strictures of that amendment. *See Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Terry,* 392 U.S. at 18 n. 15, 88 S.Ct. at 1878 n. 15, 20 L.Ed.2d at 904 n. 15 ("the Fourth Amendment governs all intrusions by agents of the public upon personal security,"); *see also State v. Halstead,* 414 A.2d 1138, 1146 (R.I.1980). Accordingly, when the police stopped Bjerke in his automobile, that stop was subject to Fourth Amendment scrutiny. The parties dispute, however, whether the stop at issue was in keeping with the Fourth Amendment commands governing warrantless seizures.

■ In a case such as this, involving a warrantless stop and detention, this Court, like the United States Supreme Court, has recognized that reasonableness is the touchstone for distinguishing lawful from unlawful seizures. This process requires a balancing of the governmental interest in performing the seizure and the nature and the quality of the intrusion. *See Prouse,* 440 U.S. at 654, 99 S.Ct. at 1396, 59 L.Ed.2d at 667; *Terry,* 392 U.S. at 20–27, 88 S.Ct. at 1879–83, 20 L.Ed.2d at 905–09. In those cases when authorities seek to effect an arrest, such as where police transport an individual to a police station for questioning, the duration of the detention has been found reasonable only when the authorities can demonstrate a quantum of knowledge known as probable cause. *See Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *State v. Bennett,* 430 A.2d 424 (R.I.1981); *State v. Halstead,* 414 A.2d 1138 (R.I.1980). Probable cause exists where a reasonable man of caution would believe a suspect had committed or is committing an offense. *Bennett,* 430 A.2d at 426–27; *State v. Belcourt,* 425 A.2d 1224, 1226 (R.I.), *cert. denied,* 454 U.S. 842, 102 S.Ct. 154, 70 L.Ed.2d 127 (1981). However, when authorities only briefly detain an individual, whether on the sidewalk or in an automobile, this lesser intrusion is generally reasonable in situations in which authorities can demonstrate a lesser quantum of knowledge known as reasonable suspicion. *Prouse,* 440 U.S. at 663, 99 S.Ct. at 1401, 59 L.Ed.2d at 673; *In re John N.,* 463 A.2d 174, 177 (R.I.1983); *Halstead,* 414 A.2d at 1145. Reasonable suspicion means the detaining authority can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry,* 392 U.S. at 21, 88 S.Ct. at 1879, 20 L.Ed.2d at 905; *see also Halstead,* 414 A.2d at 1146.

## A

■ In this case the panel concluded that the officer's reliance upon the information furnished by the anonymous telephone caller concerning the probable intoxication of the driver of a tan Oldsmobile bearing registra-

tion-plate number TV–536 did not furnish reasonable suspicion that would permit the officer's stop of the vehicle and the detention of the defendant driver in order to determine his sobriety. We agree with this proposition generally. An anonymous tip without sufficient detail or corroboration will not permit even a brief stop. *See Alabama v. White*, 496 U.S. at 329–30, 110 S.Ct. at 2416, 110 L.Ed.2d at 308–09; *In re John N.*, 463 A.2d at 177 (corroborated and detailed information justifies an investigatory stop). The panel's termination of its fact analysis at that point, however, we believe, misconceives our shared federal and state search and seizure jurisprudence.

The police officer in this case, by the time he observed the tan Oldsmobile, had received reliable information from the police department dispatcher that based upon a computer check, the registration for the vehicle, TV–536, being operated by Bjerke was known to have been previously suspended. The operation of an unregistered vehicle is a misdemeanor under § 31–8–2. Thus upon receiving that information, the police officer had clear evidence in plain view that defendant driver of the vehicle bearing the license plate TV–536 was committing a criminal offense. With this information the police officer had not only reasonable suspicion of criminal activity but probable cause that would justify a full stop. *See Whren v. United States*, —— U.S. ——, ——, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89, 95 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."); *State v. Soares*, 648 A.2d 804, 805 (R.I.1994). Because the officer had probable cause to stop Bjerke, on the basis of his commission of a criminal offense in the presence of the officer, the anonymous tip became irrelevant to the question of whether the stop was constitutional. The defendant's commission of a misdemeanor alone gave the officer probable cause to stop and detain him, and from that point on, any evidence obtained pursuant to that lawful stop, such as the odor of alcohol, the slurred speech, and bloodshot eyes, would in effect be in plain view of the arresting officer and would support an arrest for suspicion of driv-

ing while under the influence. *See, e.g., State v. Aubin*, 622 A.2d 444 (R.I.1993). To conclude piecemeal, as the panel did, that the probable cause that justified the stop was irrelevant, would have the perverse effect of permitting an intoxicated driver to escape prosecution merely because he was stopped for a separate and different motor vehicle violation. Common sense militates against such disparate analysis.

**B**

Bjerke, in defending the decision of the panel, contends that the violation for driving a vehicle with a suspended registration was merely a pretext for the true reason that the police officer stopped him. Bjerke suggests that the multitude of traffic and safety rules imposed upon the driving public creates a danger that police may stop a vehicle for some "technical violation" when they have no probable cause or reasonable suspicion that would otherwise justify the stop.

The United States Supreme Court recently addressed the issue of pretext stops in *Whren v. United States*, —— U.S. ——, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). In *Whren* plainclothes police officers patrolling a "high drug area" in Washington, D.C., noticed a truck with youthful occupants that aroused their suspicions. The police watched the vehicle stop at an intersection for an unusually long time and then suddenly the driver made a right turn without signaling in violation of the District of Columbia traffic code. The police pulled the truck over purportedly for the violation of the traffic code. Upon approaching the truck, the police observed through the driver's window two large plastic bags of what appeared to be crack cocaine. *Whren*, —— U.S. at ——, 116 S.Ct. at 1772, 135 L.Ed.2d at 95. The occupants of the truck were arrested and charged with violating various federal drug laws. *Id.*

The defendants in *Whren* challenged the stop on the ground that it was pretextual. The Supreme Court rejected what it perceived was an invitation to scrutinize the motivations of the arresting police officers by stating, "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment

analysis." *Id.* at ——, 116 S.Ct. at 1774, 135 L.Ed.2d at 98. The Court suggested that the danger of selective enforcement of the law on illegal considerations such as race found its remedy in the Equal Protection Clause rather than the Fourth Amendment. *Id.* We agree. Any subjective motivation in effecting a traffic stop based upon probable cause does not alter our Fourth Amendment analysis.

This Court has previously reached a similar conclusion in *State v. Scurry*, 636 A.2d 719, 723 (R.I.1994) where we explained, "An arrest is not, however, fatally pretextual merely because the police officers have a dual motive for making the arrest." We have not yet endorsed a view that motive alone could invalidate an otherwise valid seizure in the automobile context. Rather, to this point we have only acknowledged the potential invalidity of pretext searches and seizures in those cases where it was doubtful that probable cause ever existed to justify the initial stop, or a search conducted pursuant to a lawful arrest went beyond permissible limits. *Id.* at 723–25.

## III

▉▉▉▉ Unable to topple the seizure, Bjerke turns to the computer check of his license plate and contends that it was a search governed by the Fourth Amendment. He claims that the police lacked the requisite quantum of knowledge to justify a "search" of his license plate. In considering his contention, we point out that a Fourth Amendment search is only involved when the government intrudes into areas in which an individual is said to have a reasonable expectation of privacy. This expectation of privacy must be actually held by an individual and must be objectively reasonable. *See State v. Bertram*, 591 A.2d 14, 19 (R.I.1991); *State v. Wright*, 558 A.2d 946, 948–49 (R.I.1989); *see also Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). We do not believe that either Bjerke or the public at large has any reasonable expectation of privacy in a motor vehicle registration license plate. We reach this conclusion in view of the fact that such plates and the information behind them are within the control and cus-tody of the state through the Registry of Motor Vehicles. We do not believe that either Bjerke or the public at large has an expectation of privacy from the state when it is well known to all that the state is the very body that issues, controls, and regulates motor vehicle registration license plates. Furthermore it seems plain to us that there can be no expectation of privacy in one's license plate when it hangs from the front and the rear of one's vehicle for all the world to see. This conclusion is consistent with other jurisdictions that have pondered this issue. *See State v. Myrick*, 282 N.J.Super. 285, 659 A.2d 976 (1995); *cf. United States v. Walraven*, 892 F.2d 972, 974 (10th Cir.1989) (no privacy interest in license plates).

## IV

Ultimately Bjerke asks this Court to afford him greater protection under our State Constitution and hold that either the stop in this case was unconstitutionally pretextual or the check of his motor vehicle registration license plate was an unconstitutional search. We recognize our power to afford greater protections under the Rhode Island Constitution as expressed in *Cooper v. California*, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730, 734 (1967), but we decline to do so on the facts present in this case. In the past when considering such pleas, we have stated, "The decision to depart from minimum standards and to increase the level of protection should be made guardedly and should be supported by a principled rationale." *State v. Benoit*, 417 A.2d 895, 899 (R.I.1980). Relying upon the foregoing federal and state case law, we believe that a decision declaring the police activity in this case unconstitutional would be unprincipled and unwarranted.

For the foregoing reasons the state's petition for certiorari is granted. The decision of the panel is quashed, and the papers are remanded to the AAC.

GOLDBERG, J., did not participate.