998 So.2d 756 (2008)
STATE of Louisiana, Appellee
v.
Mustafaa Kamau KHALFANI, Appellant.
Nos. 43,647-KA, 43,648-KA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 2008.
*758 J. Schuyler Marvin, District Attorney, John M. Lawrence, Assistant District Attorney, for Appellee.
John Cucci, Jr., Shreveport, for Defendant/Appellant, Mustafaa Kamau Khalfani.
*759 Before BROWN, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
Defendant, Khalfani Mustafaa Kamau,[1] was convicted of Possession of a Schedule II Controlled Dangerous Substance, namely Methamphetamine; Possession of a Schedule I Controlled Dangerous Substance, namely Methylenedioxymethamphetamine (MDMA); and Possession of a Schedule II Controlled Dangerous Substance, namely Cocaine. He was sentenced to 5 years at hard labor for the Possession of Methamphetamine conviction; 10 years at hard labor for the Possession of MDMA conviction; and, for the Possession of Cocaine conviction, 20 years at hard labor with all but 15 years of the sentence suspended and the first 10 years without the benefit of probation, parole or suspension of sentence, 5 years' probation and a $100,000 fine. All sentences are to be served concurrently. Defendant now appeals. For the reasons set forth herein, Defendant's convictions and sentences are affirmed.

FACTS
On the morning of October 15, 2005, Louisiana State Trooper Shane Sears stopped a car driven by Defendant, in which Akintunde Charmez Collins was a passenger, on the side of Interstate 20. Trooper Sears had been assisting another trooper at a separate traffic stop when he witnessed a burgundy Ford Taurus pass them without changing lanes of travel to the lane farthest from the stopped emergency vehicles. The failure to move into the inside lane away from a stopped emergency vehicle, when possible, is a traffic violation of R.S. 32:125(B).
Trooper Sears testified that, since the prior stop was coming to an end, he chose to pursue the burgundy car with the intent of pulling the car over for failure to yield for an emergency vehicle. Trooper Sears followed the vehicle and clocked it with his radar as traveling at 78 miles an hour in a 70-mile an hour speed zone. After stopping the vehicle, Trooper Sears asked the driver, Defendant, to step out of the vehicle.[2] Trooper Sears explained that the proper procedure during a traffic stop is to speak with drivers behind the stopped car and off the shoulder of the road as a safety precaution from the interstate traffic.
Trooper Sears observed Defendant's behavior to be aggressive: "... [H]e, in a confrontational-type manner, asked me what he was stepping out of the car for." Trooper Sears further described Defendant's behavior as "confrontational. He seemed agitated. He was what we call noncompliant because I asked him to step inover into the grass several times and he wouldn't do it."
Trooper Sears discovered that the vehicle was a rental car which had been rented to a third party who had named Defendant as a driver of the vehicle. As a result of a driver's license check on both Defendant and Collins, Trooper Sears discovered several names and social security numbers connected to both Defendant and Collins.
When asked by Trooper Sears about their travel plans, Defendant told him that they had been headed to Atlanta, Georgia. *760 By that time, Deputy James McLamb, a Caddo Parish Sheriff's deputy, had arrived on the scene and had begun interviewing Collins. Deputy McLamb had been participating in the prior stop along with Trooper Sears. Deputy McLamb further described Defendant's demeanor as:
I could see the guy was just anxious, a littlekind of flexing his fists, just there wasthere was something there. I didn't hear the conversation between them. I could just tell by eyesight that something wasn't quite right, so I that's the reason I stayed instead of going back and getting in my car.
* * *
He justhe wasn't quite listening. He wouldhe would walk back towards the car. He was moving around. He was flexing his fists. Further into the conversation when I was talking to him, he would glance down at my weapon. He justjustIt's not exactly one thing. It's a lot of combinations of things that he was doing.
During his driver's license search, Trooper Sears discovered that Collins had an outstanding warrant in Texas and, at that time, he took Collins into custody and placed him in the back of his patrol car. Trooper Sears returned Defendant's driver's license and vehicle documents to him without issuing him a citation, but continued the traffic stop while waiting on confirmation from Texas that the outstanding warrant for Collins was valid.
While waiting for information on the outstanding warrant, Trooper Sears asked Defendant for consent to search the vehicle. Defendant initially agreed. Deputy McLamb conducted the search of the vehicle and found a screwdriver in the glove box which he thought looked out of place in a rental vehicle. He then retrieved his K-9 from his vehicle and conducted an open-air sniff around Defendant's vehicle. At that point, Defendant protested the search, but Deputy McLamb continued to circle the vehicle with the dog. Deputy McLamb subsequently informed Trooper Sears that the K-9 had alerted to the presence of narcotics in the vehicle and a thorough search was necessary. The K-9 appeared to alert on the trunk and, later on, on the driver's side at the front of the vehicle. Deputy McLamb looked more closely at an area near where the windshield met the vehicle body where the dog had seemed more focused. At that point, he identified an area that looked like a portion of the plastic had been removed and replaced. When he pried the plastic back off, he was able to locate the hiding place of the narcotics.
Trooper Sears described the location where the narcotics were located as:
[T]he narcotics were located in the lower leftwhat we call the firewall, which is below the windshield, that plasticpiece of plastic that touches the windshield to the motor department [sic] where your windshield wipers are, it wasthe plastic had been pried open and the narcotics were bundled up in duct tape and dryer sheets stuffed down in a natural void below the windshield wipers in the firewall.
The officers also found a receipt in the car for a box of Claritin sinus medication and another receipt for a box of Bounce dryer sheets purchased on the same night within five minutes of one another from the same CVS Pharmacy in Humble, Texas. The officers located cocaine and Ecstasy tablets in the firewall of the vehicle.
After the search was conducted and the narcotics had been located, Collins and Defendant were transported back to Troop G where Defendant was interviewed by Trooper Jason Parker. Trooper Parker testified that Defendant's first response *761 to questioning about the narcotics was that he wanted to go home. When Trooper Parker informed him that he would have to go to jail first and asked him if he would like to cooperate, Defendant responded, "You can't help me."
Trooper Parker further testified that he had taken possession of the narcotics once the vehicle and its occupants were transported to Troop G and he maintained custody of them until they were transferred to the Shreveport Field Office. The narcotics were delivered to the Crime Lab on October 17, 2005, by Trooper Parker, who also picked them up from the evidence custodian the day before his testimony on October 25, 2007. Trooper Parker could not testify from personal knowledge who had transferred them from the Crime Lab to the evidence custodian or when that transfer had occurred.
Defendant and Collins were tried together and, after waiving any conflict problems, were represented by the same counsel. They separately appealed. While their appeals were consolidated at this court for purposes of consideration, we issue a separate opinion regarding the appeal of Collins.
Prior to trial, defense counsel filed a motion to suppress seeking to keep any evidence obtained as a result of the traffic stop from being introduced which, in this case, was all the evidence. The trial court denied the motion to suppress. At trial, defense counsel argued that the State failed to establish a proper chain of custody for the narcotics, so they should not be permitted into evidence. The trial court disagreed and found that the evidence should be admitted since it was "more probable than not that these drugs are related to this case."
After the close of evidence and jury deliberation, the jury returned verdicts for both men of Guilty of Possession of a Schedule II Controlled Dangerous Substance, namely over 200 grams of Cocaine; Guilty of Possession of a Schedule II Controlled Dangerous Substance, namely Methamphetamine; Guilty of Possession of a Schedule I Controlled Dangerous Substance, namely Methylenedioxymethamphetamine (MDMA); and Not Guilty of Conspiring to Distribute Schedule I and Schedule II Controlled Dangerous Substances, namely Cocaine, Methamphetamine and Methylenedioxymethamphetamine (MDMA).
Defendant was sentenced to 5 years at hard labor for possession of methamphetamine; 10 years at hard labor for possession of MDMA; and, for possession of cocaine, 20 years at hard labor with all but 15 years of the sentence suspended and the first 10 years without the benefit of probation, parole or suspension of sentence, 5 years' probation and a $100,000 fine. Defendant appeals.

DISCUSSION

Voir Dire
Defendant argues that he was denied a fair trial because the initial screening of the petit jury venire was done outside the presence of Defendant. Defendant filed a motion for mistrial on that basis, which was denied by the trial court.
La. C. Cr. P. art. 783 allows the trial court to excuse a member of the petit jury venire at any time prior to the time he is sworn for a particular trial. The article provides that:
If jury service, whether criminal or civil, would result in undue hardship or extreme inconvenience, the district court may excuse a person from such service either prior to or after his selection for the general venire, jury pool, or jury wheel. The court may take such action *762 on its own initiative or on recommendation of an official or employee designated by the court.
La. C. Cr. P. art. 786 allows, however, that the court, the state and the defendant shall have the right to examine prospective jurors.
The Louisiana Supreme Court, in State v. Gomez, 319 So.2d 424 (La.1975), addresses the interplay of these articles.
The apparent conflict between these two Code articles has been resolved by the jurisprudence by allowing the trial judge, within his sound discretion, to release prospective jurors In [sic] advance of voir dire examination; the trial judge's decision in this matter is not disturbed unless there is a showing of fraud or collusion resulting in prejudice to the accused.
Id., citing, State v. Witherspoon, 292 So.2d 499 (La.1974); State v. Jack, 285 So.2d 204 (La.1973); State v. Williams, 258 La. 801, 248 So.2d 295 (1971).
Defendant merely alleges that, because he was not present during the time when these jurors were initially excused, the trial court committed reversible error. As stated, it is within the discretion of the trial court to excuse potential jurors prior to examination by the state and defense unless collusion and prejudice can be shown. Further, the trial court noted that defense counsel chose not to be in the courtroom when the jurors were being screened. We find, therefore, that this assignment is without merit.

Vehicle Search
Defendant contends that the trial court erred in denying his motion to suppress. He disputes the validity of the traffic stop and argues that the length of his detention following the traffic stop was unconstitutional.
The State bears the burden of proof when a defendant files a motion to suppress evidence obtained without a warrant. La. C. Cr. P. art. 703(D). The entire record is reviewable for determining the correctness of a ruling on a motion to suppress. State v. Young, 39,546 (La.App. 2d Cir.3/2/05), 895 So.2d 753. A trial court's denial of a motion to suppress is afforded great weight and will not be set aside unless a preponderance of the evidence clearly favors suppression. State v. White, 39,681 (La.App. 2d Cir.5/11/05), 903 So.2d 580; State v. Normandin, 32,927 (La.App. 2d Cir.12/22/99), 750 So.2d 321, writ denied, 00-0202 (La.9/29/00), 769 So.2d 550.
The authority and limits of the Fourth Amendment apply to investigative stops of vehicles. United States v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). The stopping of a vehicle and the detention of its occupants is a seizure within the meaning of the Fourth Amendment. U.S. v. Shabazz, 993 F.2d 431 (5th Cir. 1993). The standard for evaluating a challenge to a routine warrantless stop for violating traffic laws is the two-step formulation articulated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Sims, 40,300 (La.App. 2d Cir.10/26/05), 914 So.2d 594. The court must determine "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." U.S. v. Shabazz, supra, quoting Terry v. Ohio, supra.
For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic *763 violation, occurred or is about to occur, before stopping the vehicle. United States v. Sharpe, supra; State v. Sims, supra. When determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer. State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048. The determination of reasonable suspicion for an investigatory stop, or probable cause for arrest, does not rest on the officer's subjective beliefs or attitudes, but turns on a completely objective evaluation of all the circumstances known to the officer at the time of the challenged action. State v. Landry, 98-0188 (La. 1/20/99), 729 So.2d 1019; State v. Arnold, 34,194 (La.App.2d Cir. 12/6/00), 779 So.2d 840. When an officer observes what he objectively believes is a traffic offense, the decision to stop the vehicle is reasonable. Whren v. U.S., 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).
In the case sub judice, both Trooper Sears and Deputy McLamb testified that, as they were concluding a previous traffic stop, they observed a vehicle matching the description of the vehicle driven by Defendant traveling in the lane closest to them. They both testified that the vehicle was very close to the fog line, i.e., the white line that divides the shoulder from the driving lane. Video from another patrol car of another officer involved with the prior traffic stop shows a car similar in appearance to the one driven by Defendant pass without moving into the far lane. La. R.S. 32:125(B) requires that, if possible, a vehicle move into the lane away from an emergency vehicle stopped on the side of the road.[3] In addition, Trooper Sears testified that, using his radar gun, he observed Defendant driving 78 miles per hour when the posted speed limit was 70 miles per hour. We find, therefore, that the initial stop was proper.
We, therefore, turn our attention to the length of the detention and the propriety of the search. During the detention of an alleged violator of any provision of the motor vehicle laws of this state, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and the issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity. La. C. Cr. P. art. 215.1(D). La C. Cr. P. art. 215.1(D) does not preclude a police officer, who may lack reasonable suspicion of other criminal activity, from engaging a motorist in conversation while investigating a routine traffic violation. State v. Cowan, 99-2888 (La.6/16/00), 763 So.2d 583.
The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained. See, State v. Cowan, supra; U.S. v. Jackson, 120 F.3d 1226 (11th Cir.1997); U.S. v. Torres, 32 F.3d 225 (7th Cir.1994), cert. denied, 513 U.S. 1116, 115 S.Ct. 912, 130 L.Ed.2d 794 (1995). Additionally, a canine *764 search is not a "search" within the meaning of the Fourth Amendment. U.S. v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); State v. Gant, 93-2895 (La.5/20/94), 637 So.2d 396; State v. Paggett, 28,843 (La.App. 2d Cir.12/11/96), 684 So.2d 1072. Once a dog alerts on the vehicle, police officers have probable cause to search the vehicle without first obtaining a warrant. See, Maryland v. Dyson, 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999); U.S. v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).
In the case sub judice, Deputy McLamb did not need probable cause, or even reasonable suspicion, to retrieve his K-9 partner for an open-air search of the vehicle. We make no opinion, therefore, whether the suspicious screwdriver or Defendant's demeanor, along with the entirety of the evidence adduced at trial, would amount to probable cause to search the vehicle without consent. Once the K-9 alerted to the presence of drugs in the vehicle, the officers had probable cause to search the vehicle.
Concerning the length of the detention, when the driver's license search on Collins showed an outstanding warrant, the officers were reasonable in continuing to detain Defendant, Collins and the vehicle until the validity of the warrant could be confirmed. It was during this time that the search was initially conducted with the consent of Defendant. The K-9 was used relatively soon after the search was begun and quickly alerted for the presence of contraband. While the search did take nearly an hour until the contraband was discovered, probable cause that the vehicle contained contraband developed rather quickly and justified the continued detention and search. We, therefore, find that this assignment of error is without merit.

Responsive Verdict
Defendant argues that the verdicts against him were erroneous because the verdict of simple possession is not a responsive verdict to the charged offense of possession with intent to distribute and that the trial court did not sentence him in accordance with that jury verdict.
If there is no evidence reasonably supporting a verdict, then such a verdict may be excluded as a possible responsive verdict. La. C. Cr. P. art. 814(A); State v. George, 26,867 (La.App. 2d Cir.4/5/95), 652 So.2d 1382, writ denied, 95-1151 (La.9/29/95), 660 So.2d 855; State v. Harris, 627 So.2d 788 (La.App. 2d Cir.1993), writ denied, 93-3188 (La.3/18/94), 634 So.2d 851.
An irregularity or error, however, cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C. Cr. P. art. 841; State v. Smith, 39,698 (La.App. 2d Cir.6/29/05), 907 So.2d 192; State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. A new basis for an objection cannot be raised for the first time on appeal. La. C. Cr. P. art. 841; State v. Cressy, 440 So.2d 141 (La. 1983); State v. Sims, supra; State v. O'Neal, 501 So.2d 920 (La.App. 2d Cir. 1987), writ denied, 505 So.2d 1139 (La. 1987).
A mere statement of an assignment of error in a brief does not constitute briefing of the assignment, and, therefore, the assignment is deemed abandoned. State v. Lee, 39,969 (La.App. 2d Cir.8/17/05), 909 So.2d 672, writ denied, 06-0247 (La.9/1/06), 936 So.2d 195; State v. Toney, 26,711 (La.App. 2d Cir.3/1/95), 651 So.2d 387. See also URCA Rule 2-12.4.
Since the objection was not raised at the trial court, it cannot now be raised on *765 appeal. Further, we note that possession of a controlled dangerous substance is a responsive verdict under La. C. Cr. art. 814. In addition, the sentence of Defendant is in accordance with the range established by La. R.S. 40:967. This assignment is, therefore, without merit.

CONCLUSION
For the foregoing reasons, the convictions and sentences of Defendant, Khalfani Mustafaa Kamau, are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] Defendant's driver's license used the name Mustafaa Kamau Khalfani. Related to this incident, he was charged under the name Khalfani, but, in open court, stated that his proper name was Khalfani Mustafaa Kamau. That surname Kamau was used by the trial court and will be used by this court.
[2] Trooper Sears' vehicle was equipped with a video and audio recorder and video footage was taken of the entire stop. The video was entered into evidence and played for the jury.
[3] La. R.S. 32:125(B) provides that:

B. When any vehicle making use of any visual signals as authorized by law, including the display of alternately flashing amber or yellow warning lights is parked on or near the highway, the driver of every other vehicle shall:
(1) When driving on an interstate highway or other highway with two or more lanes traveling in the same direction, yield the right-of-way by making a lane change into a lane not adjacent to the parked vehicle if possible with due regard to safety and traffic conditions. If a lane change is not possible, the driver shall slow to a reasonably safe speed.