LOLLEY, J.
| iThis pretrial criminal writ arises from the First Judicial District Court, Parish of Caddo, Louisiana. Darius J. Prince was charged by bill of information with the illegal carrying of a weapon while in possession of a controlled dangerous substance, pursuant to La. R.S. 14:95(E). Prince filed a motion to suppress, arguing that police officers discovered a controlled substance and a firearm based on a pretex-tual stop and illegal search of his vehicle. After a contradictory hearing, the trial *9 court denied the motion. Prince filed' an application for supervisory review of the trial court’s denial of his motion to suppress. This Court granted the writ and placed the matter on the appeal docket. For the following reasons, we affirm the trial court’s judgment.
FACTS
Around 1:30 a.m. on May 14, 2014, Shreveport police officers Jeremy Kelly and Cody Roy were on patrol in Shreveport, Louisiana. While traveling on Gilbert Avenue, the officers moved behind a 1999 green Cadillac with a Texas license plate, which was allegedly hitting the yellow fog line and driving slower than normal. "While stopped at a red light, the officers ran the license plate, revealing that the registration was expired.' The officers activated their lights and siren and ordered the Cadillac to pull over. The driver, Darius J. Prince, stopped in a parking lot. Upon making initial contact with Prince, both officers detected the “strong” odor of marijuana emanating from the car. Prince refused to consent to a search of the Cadillac, and the officers- called the canine drug unit. Shortly thereafter, the drug dog arrived and allegedly “hit” as he passed the driver’s side door, | ¿which was then opened to allow the dog inside the Cadillac. A free hand search of the vehicle in the area the dog alerted yielded no drugs. However, a handgun was found in the center console and, at that point, Prince was issued a Miranda warning.
The officers called police dispatch to run a check on the gun, which came back “clean,” i.e., not reported stolen. The dash camera footage reveals that the officers questioned Prince about previous arrests, explaining to him that it -is a felony for a convicted felon to possess a firearm. Prince can be heard responding that he was never convicted. The officers contacted Centenary College public safety to run a criminal records check on Prince. While waiting for Prince’s criminal record, Off. Kelly asked Prince again if he had any marijuana on him. Prince admitted to having a “little bit” on him and handed Off. Kelly a napkin containing a plant material, later determined by the North Louisiana Crime Lab to be two grams of marijuana. Around 2:01 a.m., the officers learned that Prince had not been convicted of illegal possession of ,a firearm. Ultimately, Prince was placed under arrest, and later charged with illegal carrying of a firearm while in possession of a controlled danger-. ous substance, in violation of La.. R.S. 14:95(E).
Prince filed a pretrial motion to suppress the evidence collected during the search of his vehicle. During the hearing, the trial court considered testimony from Offs. Kelly and Roy, who ■ conducted the initial traffic stop, and Corporal Larry McCloskey from the Shreveport Police Department Canine Unit. It also reviewed the dash camera footage from the Upatrol car. After considering the evidence presented at the hearing, the trial court denied Prince’s motion, finding the initial traffic stop was valid and delay for the canine unit was supported by probable cause. Prince requested supervisory review of the trial'court’s denial of his motion to suppress.
DISCUSSION
Prince argues that the trial court erred in denying his motion to suppress. He contends the trial court erred in finding that the traffic stop had a valid pretext because his Texas registration sticker was located on the front windshield of his vehicle outside the plain view of the officers behind him. He also argues that the Fourth Amendment does -not allow for the prolonging of a traffic stop, for a dog sniff *10 of a vehicle when consent to search has been clearly denied.
This court reviews the trial court’s ruling on a motion to suppress under the manifest error standard in regard to factual determinations, as well as credibility and weight determinations, while applying a de novo review to findings of law. State v. Devalle, 46,563 (La.App.2d Cir.09/21/11), 73 So.3d 1026. A trial court’s denial of a motion'to suppress is afforded great weight and will not be set aside unless a preponderance of the evidence clearly favors suppression. State v. Khalfani, 43,647 (La.App.2d Cir.10/29/08), 998 So.2d 756, writ denied, 2009-0267 (La.11/06/09), 21 So.3d 305.
The right of every person to be secure in his person, house, papers and effects against unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution and by Article I, § 5, |4of the 1974 Louisiana Constitution. It is well settled that a search and seizure conducted without a warrant issued on probable cause is per se unreasonable . unless the warrantless search and seizure can be justified .under one of the narrowly drawn exceptions to the warrant requirement. State v. Thompson, 2002-0333 (La.04/09/03), 842 So.2d 330; State v. Tatum, 466 So.2d 29 (La.1985); State v. Lawrence, 45,061 (La.App.2d Cir.03/03/10), 32 So.3d 329, writ denied, 2010-0615 (La.10/08/10), 46 So.3d 1265. The purpose of limiting warrantless searches to certain recognized exceptions is to preserve the constitutional safeguards provided by a warrant, while accommodating the necessity of warrantless searches under special circumstances. Donovan v. Dewey, 452, U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981); State v. Thompson, supra.
 The authority and limits of the Fourth Amendment apply to investigative stops of vehicles. U.S. v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); U.S. v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). The stopping of a vehicle, and the detention of its occupants is a seizure within the meaning of the Fourth Amendment, State v. Burney, 40,056 (La.App.2d Cir.05/23/12), 92 So.3d 1184, writ denied, 2012-1469 (La.1/11/13), 106 So.3d 548. The standard for evaluating a challenge to a routine warrantless stop for violating traffic laws is a two-step formulation: the .court must determine “whether the officer’s action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.” Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Pena, 43,321 (La.App.2d Cir.07/30/08), 988 So.2d 841.
IsFor a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred or is about to occur, before stopping the vehicle. U.S. v. Sharpe, supra; State v. Burney, supra, When determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer. State v. Huntley, 1997-0965 (La.03/13/98), 708 So.2d 1048. If a police officer observes a traffic infraction, the subsequent stop for that offense is clearly legal; the, standard is a purely objective one that does not take into account the subjective beliefs or expectations of the detaining officer. State v. Lee, 46,-742 (La.App.2d Cir.12/14/11), 79 So.3d 1278. This objective standard is indifferent to the relatively -minor nature of a traffic violation. Id. In Louisiana, as in other jurisdictions, a car which partially *11 leaves its lane of travel and crosses the fog line either at the center of a divided highway or on the right hand shoulder of the road therefore provides the police with probable cause to believe that a traffic violation for improper lane use has occurred. State v. Waters, 2000-0356 (La.03/12/01), 780 So.2d 1053.
The United States Supreme Court has held that an individual does not have a reasonable expectation of privacy in an automobile’s vehicle identification number. N.Y. v. Class, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986). ' Other jurisdictions have extended this holding and determined that a law enforcement officer can randomly check license plate numbers without | (¡intruding on a defendant’s privacy rights. See Jones v. Town of Woodworth, 12-1349 (La.App. 3d Cir.12/26/13), 132 So.3d 422; State v. Nicholson, 1995-2526 (La.App. 4th Cir.02/15/96), 669 So.2d 1280. In State v. Bjerke, 697 A.2d 1069, 1073 (R.I.1997), the court held that a computer check of the defendant’s license plate was not a Fourth Amendment “search” because license “plates and the information behind them are within the control and custody of the state through the Registry of Motor Vehicles.” The court in Bjerke further held that “there can be ño expectation of privacy in one’s license plate when it hangs from the front and the rear of one’s vehicle for all the world to see.” Id. See Olabisiomotosho v. City of Houston, 185 F.3d 521, 529 (5th Cir.1999); Jones v. Town of Woodworth, supra. An expired license plate tag is a traffic violation under La. R.S. 32:51. State v. Harris, 48,659 (La.App.2d Cir.05/28/14) 140 So.3d 1226, writ denied, 2014-1312 (La.02/06/15), 158 So.3d 810.
In stopping a vehicle on reasonable suspicion, an officer has the right to conduct a routine license and registration check and may engage in conversation with the driver and any passenger while doing so. State v. Lee, supra. ‘ If a police officer has a specific suspicion of criminal activity, he may further detain thé individual or the property while he diligently, pursues a means of investigation likely to quickly confirm or dispel the particular suspicion. State v. Burney, supra. In order to further detain a suspect, however, the officer must have articulable facts giving rise to a reasonable suspicion of some separate illegal activity that would justify further 17detention of the suspect. State v. Williams, 47,750 (La.App.2d Cir.04/10/13), 112 So.3d 1022; State ex rel. Williams v. State, 2013-1394 (La.12/02/13), 126 So.3d 502. In making that determination, the totality of the circumstances must be taken into account. Id. The circumstances must be judged by an objective standard such that the facts available to the officer at the moment of seizure or the' search would warrant a man of reasonable caution in thé belief that the action taken was appropriate. State ú Lee, supra. There is no Bright line rule for when a detention lasts too long and each instance must be assessed in view of the surrounding circum-stancés. Id. Factors which may give rise to reasonable suspicion include the demeanor of the suspect and unlikely and inconsistent accounts regarding travels. State v. Miller, 2000-1657 (La.10/26/01), 798 So.2d 947; State v. Lee, supra.
A warrantless search of an' automobile is permitted where there is probable cause to justify the search, without proving additional exigency, when the automobile is readily mobile. State v. Freeman, 44,980 (La.App.2d Cir.01/27/10), 33 So.3d 222, writ denied, 2010-0535 (La.10/01/10), 45 So.3d 1094, citing Maryland v. Dyson, 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999). A police officer’s detection of the odor of. marijuana coming from a defendant’s vehicle, on its *12 own, is enough to establish reasonable suspicion. State v. Williams, 38,379 (La.App.2d Cir.11/25/03, 858 So.2d 878), writ denied, 2003-3535 (La.03/12/04), 869 So.2d 807.
The use of a drug dog as a means of investigation is one way to confirm or dispel the officer’s reasonable suspicion. State v. Burney, supra. |SA dog sniff of the vehicle’s exterior surfaces is not a “search” under the meaning of the Fourth Amendment. United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). However, at the moment the dog alerts to the interior of the vehicle, officers have probable cause to search a vehicle without first obtaining a warrant. State v. Lee, supra.
Regarding the initial traffic stop in this case, the dash camera footage includes a conversation in which Off. Roy can be heard explaining that he turned the camera on initially because he observed the Cadillac “hitting the line.” He also states that Prince’s car was on a “slow roll” and was taking longer than normal to get through the neighborhood. Both patrol officers testified that, upon realizing that the registration on Prince’s Cadillac was expired, they directed him to pull over. Officer Kelly testified that although it was a rainy night, he was one car length behind the Cadillac in front of him and was able to clearly see the Texas license plate number. Officer Roy explained that they had not followed or chased Prince, and were only behind him for less than a minute before running the license plate, discovering the registration was expired, and signaling Prince to pull over. This was also corroborated by the dash camera footage, which began to run at 1:33 a.m., and showed the patrol car pulled up behind Prince at a red light. Officer Roy can be heard saying, “April 2014. January, February, March, April, May-pull him over.” Officer Kelly turned on the sirens at 1:34 a.m., and Prince pulled into a parking lot. Prince admitted that the license plate was expired and conceded that he did not have a registration for the vehicle.
lflThe traffic stop was reasonable at its inception because officers observed driving that prompted them to turn on the dash camera and begin recording. When applying a purely objective standard to the actions of Offs. Kelly and Roy under these circumstances it is clear that traffic stop for expired registration, a traffic violation under La R.S. 32:51, was completely legal, regardless of any subjective beliefs Prince alleges the officers may have had. The license plate on Prince’s vehicle was clearly visible to officers. Prince had no privacy interest in his license plate, and a random license plate check does not constitute a search or seizure within the meaning of the Fourth Amendment and the Louisiana Constitution. Therefore, although the actual expired Texas registration tag was located on the front windshield and outside the plain view of the officers in the patrol car behind him, the officers did not violate Prince’s rights when they ran his license plate. The fact that Prince was never ultimately issued a traffic citation for the expired registration has no bearing on whether or not a valid reason existed to initiate the traffic stop in the first place. Based on this record, the trial court’s approval of the stop is not manifestly erroneous. This assignment of error is without merit.
In his second assignment of error, Prince argues that the traffic stop was unconstitutionally prolonged when the officers continued to detain him until the arrival of the canine unit. He asserts that because he never gave consent to search the vehicle, subsequent detainment after his denial of consent was unconstitutional. *13 To support this assertion, Prince, claims the holding in Rodriguez v. U.S., — U.S. —, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015), prohibited the officers |tnfrom prolonging a traffic stop to wait on the arrival of the drug dog to conduct a sniff of his Cadillac. He further argues that the wait for the canine unit was unreasonably long.
Officer Kelly testified that when he approached Prince’s car he could smell marijuana, and observed that Prince was acting nervous, stuttering, and talking fast. Officer Roy also testified that he smelled marijuana and Prince was speaking fast, stuttering, and stammering. The officers obtained Prince’s driver’s license, returned to the patrol car, leaving Prince in his vehicle, and performed a warrant check in accordance with normal traffic stop procedure. While running a check of Prince’s information with police dispatch, which came back clear, Offs. Kelly and Roy can be heard on the dash camera footage discussing the smell of marijuana emanating from Prince and his “nervous” demeanor. When Prince refused to consent to a search of his car, Off. Kelly called the canine unit, which arrived about five minutes later. He asked Prince to sit. in the back of the patrol car while the dog walked around the Cadillac.
Corporal Larry McCloskey, canine officer, and his dog can be seen on the dash camera footage walking around Prince’s Cadillac at approximately 1:44 a.m.; this is consistent with the patrol officers’ testimony that there was a five to ten minute delay between the traffic stop and the dog sniff of the car. The dash camera footage shows the dog circle the Cadillac, paw at the driver’s door, jump at the door, bark, and then sit down facing the direction of Prince’s Cadillac. After the dog “hit” on the front driver’s side door of the car, it was opened and the dog continued to sniff inside. Corporal |n McCloskey testified that he too could smell the distinct marijuana odor. He indicated to the other officers that the dog sniffed mostly the driver’s seat and stuck his nose between the driver’s seat and the center console. Once the dog was put up, the officers conducted a hand search of the front driver's side compartment. Officers found a handgun inside the center console, but no narcotics were found inside the Cadillac. Once the search was completed, Off. Kelly went back to the patrol ear to retrieve Prince. He testified that when he opened the patrol car door, he noticed that the patrol car now smelled like marijuana. Officer Kelly confronted Prince with the discovery of the gun and read him his Miranda rights. He asked Prince again where the marijuana was. Prince pulled a napkin containing what was later confirmed to be marijuana from his jacket pocket and handed it to Off. Kelly.
The trial court addressed Prince’s Rodriguez argument by stating that there are two major differences from the facts here: the time involved and the distinct odor of marijuana. In Rodriguez, supra, the initial traffic stop was initiated because the vehicle was driving on the shoulder of the road. The officer completed the traffic stop and issued a citation in about 21 minutes. ’ The officer then detained the defendant while waiting for the drug dog to arrive. After a sniff test and search of the vehicle a large bag of methamphetamine was discovered. The only probable cause for a search of the vehicle in Rodriguez was fhe positive .“hit” from the drug dog sniff test. A bag-of methamphetamine does not have the same distinct and immediately identifiable odor that marijuana contained in a paper napkin | iainside someone’s jacket pocket emanates. Therefore, detaining- the defendant to wait for the canine unit was a violation of the Fourth Amendment under the Rodriguez facts, because there was no reasonable suspicion *14 to justify Calling the canine unit in the first place.
Here, The officers’ articulated observations of Prince’s nervous behavior and the distinct odor of marijuana established reasonable suspicion that drugs would be found inside the Cadillac or some sort of other criminal activity was taking place. Officers did not unconstitutionally prolong the stop because reasonable suspicion existed to justify waiting for the arrival of the canine unit, which occurred approximately ten minutes after the request was made. At the time the sniff test was conducted, Prince had been detained only about 15-20 minutes, which is within the timé generally allotted for a routine traffic stop. Once the drug dog “hit” on Prince’s Cadillac the officers had probable cause to search the vehicle without first obtaining a warrant. Although the search of the Cadillac did not yield any drugs, which Prince later voluntarily gave to officers, it did yield a handgun, which was found in the course of a valid search.
Considering the totality of the circumstances involved in the present matter, we find no error-in the trial court’s determination that the officers had a basis for reasonable suspicion of additional criminal activity and for extending the stop until the canine unit arrived to confirm or dispel the officer’s suspicions. Thus, this assignment of error is also without merit.
[ ^CONCLUSION
For the foregoing reasons, the trial court’s denial of Darius J. Prince’s pretrial motion to suppress is affirmed. This matter is remanded to the trial court to continue proceedings.
AFFIRMED.