Judgment rendered January 15, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 52,983-KW

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Applicant

versus

ZEKE T. KELPE                               Respondent

* * * * *

On Application for Writs from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 17-M2554

Honorable Frederic C. Amman, III, Judge

* * * * *

ROBERT S. TEW                               Counsel for Applicant
District Attorney

ROBERT B. STALEY
Assistant District Attorney

STEPHEN A. JEFFERSON                        Counsel for Respondent

* * * * *

Before WILLIAMS, McCALLUM, and THOMPSON, JJ.

**WILLIAMS, C.J.**

The defendant, Zeke T. Kelpe, was charged by bill of information with driving while intoxicated ("DWI"), first offense, in violation of La. R.S. 14:98(A)(1). The trial court granted the defendant's pretrial motion to suppress evidence. The State of Louisiana sought supervisory review of that ruling; this Court granted the state's writ application to the appellate docket. For the following reasons, we hereby reverse the trial court's ruling granting the defendant's motion to suppress, deny the motion and remand for further proceedings.

## FACTS

On September 16, 2017, at approximately 1:30 a.m., Louisiana State Trooper Dakota DeMoss observed the driver of a vehicle execute a left turn from North 2nd Street onto Louisville Avenue in Monroe, Louisiana. According to Trooper DeMoss, the driver, later identified as the defendant, Zeke Talbert Kelpe, executed the left turn and immediately traversed into the right lane, in violation of La. R.S. 32:101(A)(2).

Trooper DeMoss conducted a traffic stop and ordered the defendant to exit his vehicle. Trooper DeMoss observed that the defendant was "moving very slow and acting lethargic" as he exited the vehicle. He also noticed that the defendant's eyes were "bloodshot red," and he detected a "strong odor associated with an alcoholic beverage emitting from his person." The state trooper placed the defendant under arrest and transported him to the Ouachita Correctional Center. Thereafter, the defendant submitted a breath sample registering a blood alcohol concentration of .176 percent.

The defendant was charged by bill of information with DWI, first offense, in violation of La. R.S. 14:98(A)(1), and improper turn, in violation

of LA. R.S. 32:101(A)(2).[1]  On September 6, 2018, the defendant filed a motion to suppress the evidence seized, *i.e.*, the results of his blood alcohol test.  Following a hearing, the trial court granted the motion to suppress.  By order dated June 17, 2019, this Court granted the state's application for supervisory writs.

## DISCUSSION

The state contends the trial court erred in granting the defendant's motion to suppress.  The state argues that Trooper DeMoss acted on the basis of a presumptively valid statute and had reasonable cause to stop and interrogate the defendant, who was suspected of committing a traffic violation.

In response, the defendant argues that the trial court's ruling granting the motion to suppress was proper for the following reasons:  (1) the statute is vague and ambiguous; (2) the statute does not define how far and how long a motorist must drive in the right lane of the center line before changing lanes; (3) there were no other vehicles in the outside lane at the time of the alleged traffic violation; (4) it was not "practicable" to drive very far in the inside lane; and (5) Trooper DeMoss bypassed "several places to make an appropriate stop" before stopping the defendant on the other side of the Louisville Bridge.

The authority and limitations of the Fourth Amendment apply to investigative stops of vehicles.  *U.S. v. Sharpe*, 470 U.S. 675, 105 S. Ct. 1568, 84 L.Ed.2d 605 (1985); *U.S. v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985).  It is well settled that the stopping of a vehicle and

---

[1] The district attorney declined to prosecute the improper turn offense.

2

the detention of its occupants is a seizure within the meaning of the Fourth Amendment. *State v. Prince*, 50,548 (La. App. 2 Cir. 4/13/16), 195 So. 3d 6; *State v. Burney*, 40,056 (La. App. 2 Cir. 5/23/12), 92 So. 3d 1184, *writ denied*, 2012-1469 (La. 1/11/13), 106 So. 3d 548.

In determining the legality of a traffic stop, a reviewing court must decide "whether the officer's actions were justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio,* 392 U.S. 1, 20, 88 S. Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *State v. Gates*, 2013-1422 (La. 5/7/14), 145 So. 3d 288. For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity occurred or is about to occur, before stopping the vehicle. *U.S. v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *State v. Gates*, *supra*; *State v. Kalie*, 1996-2650 (La. 9/19/97), 699 So. 2d 879. When an officer observes what he objectively believes is a traffic offense, the decision to stop the vehicle is reasonable, regardless of the officer's subjective motivation. *Whren v. U.S.*, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996); *State v. Gates*, *supra*; *State v. Waters*, 2000-0356 (La. 3/12/01), 780 So. 2d 1053.

Although they may serve, and may often appear intended to serve, as the prelude to the investigation of much more serious offenses, even a relatively minor traffic violation provides an objective basis for lawfully detaining a vehicle and its occupants. *See State v. Richards*, 1997-1182 (La. App. 5 Cir. 4/15/98), 713 So. 2d 514 (failure to come to a complete stop at a stop sign); *State v. Dixon*, 30,495 (La. App. 2 Cir. 2/25/98), 708 So. 2d 506 (traveling less than a car length behind lead vehicle); *State v. Duran*, 1996-

3

602 (La. App. 5 Cir. 3/25/97), 693 So. 2d 2 (failure to signal before changing lanes).

When the legality of a search or seizure is placed at issue by a motion to suppress evidence, the state bears the burden of proving the admissibility of any evidence seized without a warrant. La. C.Cr.P. art. 703(D). Trial courts are vested with great discretion when ruling on a motion to suppress, and the ruling of a trial judge on the motion to suppress will not be disturbed absent an abuse of that discretion. *State v. Coleman*, 2014-0402 (La. 2/26/16), 188 So. 3d 174, *cert. denied*, ___ U.S. ___, 137 S. Ct. 153, 196 L. Ed. 2d 116 (2016); *State v. Farris*, 51,094 (La. App. 2 Cir. 12/14/16), 210 So. 3d 877, *writ denied*, 2017-0070 (La. 10/9/17), 227 So. 3d 828.

La. R.S. 32:101 provides, in pertinent part:

A. The driver of a vehicle intending to turn at an intersection shall proceed as follows:
***
**(2) Left turns on two-way roadways.** At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection.
***

We first note that, for the first time on appeal, the defendant argues that La. R.S. 32:101(A)(2) is "vague and ambiguous" because it does not define "how far and how long a person must drive in the right lane of the center line."

A constitutional challenge may not be considered by an appellate court unless it was properly pled and raised in the trial court below. *State v.*

*Hatton*, 2007-2377 (La. 7/1/08), 985 So. 2d 709. A constitutional challenge to a state law must be pled or litigated in the trial court in order for the issue to be considered on appeal. *State v. Kennedy*, 49,036 (La. App. 2 Cir. 5/14/14), 140 So. 3d 1201. Additionally, where a statute is alleged to be unconstitutional, the state attorney general must be served with a copy of the proceeding and given the opportunity to be heard. La. C.C.P. art. 1880.

Our review of this record reveals that the defendant did not properly raise his constitutional challenge of La. R.S. 32:101(A)(2) before the trial court, and there was no showing that the attorney general was served notice of any such claim. Accordingly, the issue with regard to the validity of the statute is not properly before this court and will not be addressed.

At the hearing on the motion to suppress, Louisiana State Trooper Dakota DeMoss testified as follows: on the night of the defendant's arrest, he had been a state trooper for approximately two years and had issued numerous traffic citations; on September 16, 2017, at approximately 1:30 a.m., he observed the defendant execute an illegal left turn from North 2nd Street onto Louisville Avenue in Monroe; the defendant was in the left lane when he initiated the turn, but he "skipped" the inside lane of Louisville Avenue and "went directly to the outside lane, the right-hand lane"; under Louisiana law, a person executing a turn must "stay in the lane that they were already in[,] in the road prior and stay right of the center line"; he did not observe traffic or anything else in the roadway that could have caused the defendant to execute a "wide" turn; he followed the defendant across the Louisville Bridge and activated his overhead lights; he stopped the defendant at the corner of Louisville Avenue and Trenton Street in West Monroe; he exited his vehicle and asked the defendant to "step out of his

5

vehicle"; the defendant "was slow getting out of the vehicle" and "had to use both hands to grab the door and his roof to balance [himself] while getting out"; and he asked the defendant to walk to the rear of the vehicle, and the defendant "was very slow to move, very lethargic" when complying.

On cross-examination, Trooper Demoss testified that there is "no set time" for a motorist to remain in the inside lane before moving to the outside lane; a motorist can move over after he has established himself in the inside lane and has ascertained that it is safe to move over; the defendant did not establish himself in the left lane; after executing the turn, the defendant "continued diagonally into the outside lane"; he does not recall observing any other traffic traveling on Louisville Avenue at that time; and he did not stop the defendant immediately because the traffic violation was committed "at the very base of the Louisville Bridge and it wasn't safe to stop him until we crossed the bridge and w[ere] off the roadway."

The defendant testified at the hearing. According to the defendant, he turned into the inner lane for "a few seconds," then proceeded into the right lane after ascertaining that it was safe to do so. On cross-examination, the defendant testified that he executed the left turn, then crossed the inner lane and proceeded to the outer lane.

Trooper DeMoss was recalled to testify as a rebuttal witness. He testified he did not see any other vehicles at the intersection of Louisville Avenue and North 2nd Street. The officer also testified that the incident occurred at approximately 1:30 a.m., and the traffic lights on Louisville Avenue had changed to "steady flashing yellow" lights.

The record reveals that Trooper DeMoss observed the defendant execute a left turn and then traversed into the right lane. As stated above, on

6

cross-examination, the defendant admitted that he did so. Once the law enforcement officer observed the defendant committing the traffic violation, he had a reasonable basis to effect a traffic stop. Consequently, we find that Trooper DeMoss had "an objectively reasonable suspicion" that the defendant had committed a traffic offense before stopping the defendant's vehicle. See *U.S. v. Sokolow*, *supra*; *State v. Gates*, *supra*. Accordingly, we reverse the trial court's ruling granting the defendant's motion to suppress.

## CONCLUSION

For the foregoing reasons, the trial court's ruling granting the defendant's motion to suppress the evidence is reversed and the motion is denied. This matter is remanded to the trial court for further proceedings.

**REVERSED; MOTION TO SUPPRESS DENIED; REMANDED FOR FURTHER PROCEEDINGS.**