CARAWAY, J.
 

 11 Freddie Lee, Jr., entered a Crosby
 
 [1]
 
 plea with an agreed sentence to the charge of possession of 400 grams or more of cocaine with intent to distribute which reserved his right to appeal the trial court’s denial of his motion to suppress the evidence. In keeping with the plea agreement, Lee received a sentence of 15 years at hard labor with credit for time served. He now appeals the denial of his motion to suppress. We affirm.
 

 Facts
 

 At 2:17 a.m. on June 29, 2007, Freddie Lee, Jr., was one of four occupants in a vehicle which was the subject of a traffic stop on Interstate 20 in Bossier City, Louisiana. A vehicle search during that stop revealed 3,880 grams of cocaine in a safe inside the trunk of the car. Lee and the three other occupants of the vehicle were charged in the same bill of information filed on August 1, 2007, with one count of possession of 400 or more grams of cocaine with intent to distribute, a violation of La. R.S. 40:967(A)(1) & (F)(1)(c).
 

 On July 18, 2008, Lee filed a motion to suppress any and all physical evidence seized during the alleged unconstitutional search and seizure of the vehicle. The motion came for hearing on April 3, 2009. Sgt. Jason Parker, with the Louisiana State Police, testified that on June 29, 2007, he was on patrol on 1-20 in Bossier City when he observed a vehicle traveling in the left-hand lane for a total of two miles at approximately 45 to 50 mph without passing any other vehicles. After following the vehicle for about a |2mile he activated his patrol unit’s camera equipment and recorded the violation. Sgt. Parker acknowledged that at one point there were construction barricades on the right shoulder of the road, but that the suspect vehicle continued in the left lane after there were no longer any barricades. Accordingly, Sgt. Parker made a vehicle stop.
 

 In conducting the stop, Sgt. Parker testified that he encountered several circumstances which led him to suspect further criminal activity. The driver, Antonio Morris, appeared nervous when he produced his license as his hand was shaking. Furthermore, Morris could not tell Sgt. Parker where he was coming from other than the State of Texas. The front passenger of the vehicle, Carlos Smith, on the other hand, told Sgt. Parker that they were coming from a family reunion in Irving, Texas. The owner of the vehicle was not present, and the parties reported that they were returning to Florida. There were eight air fresheners hanging from the rearview mirror. Sgt. Parker testified that in his experience, the presence of that many air fresheners could suggest an effort to mask the odor of illegal narcotics. Finally, when Sgt. Parker called the names of Morris and Smith into dispatch, he was advised that they had criminal histories involving illegal drugs and resisting an officer. As a result of the criminal histories, Sgt. Parker requested backup and
 
 *1281
 
 was shortly joined by Trooper George Beck and Sgt. Sean Joyner.
 

 After issuing the citation, Sgt. Parker asked Morris if he could search the vehicle. When Morris refused, Sgt. Parker testified that Sgt. Joyner radioed a request for a K-9 unit to conduct a perimeter search of the vehicle. |sSgt. Parker estimated that approximately 20 minutes elapsed between the time of the initial stop and the refusal of consent to search, and that 35 minutes elapsed between the time of the refusal of consent and the arrival of the K-9 unit. Sgt. Parker testified that when the drug dog alerted on the vehicle, a search was conducted. In the trunk of the vehicle, officers found a Century safe which they accessed with a key from the key ring in the vehicle’s ignition. Sgt. Parker testified that the safe contained approximately four kilos of cocaine.
 

 Sgt. Joyner confirmed that he responded to the call for backup by Sgt. Parker in order to assist in the vehicle search. When Sgt. Joyner arrived, he observed four individuals in a vehicle and called Troop G to request a K-9 unit when the driver refused consent to search. Sgt. Joyner remained until the K-9 unit arrived and the subsequent search of the vehicle was conducted. He testified that after the dog alerted, a search of the trunk occurred and a safe containing 4 kilos of suspected cocaine was found. While he recognized Lee as one of the occupants of the vehicle, Sgt. Joyner could not recall that Lee did anything specifically that raised suspicion.
 

 Trooper Sears testified that he was the K-9 handler called out to the scene of the traffic stop. When he arrived, he deployed his dog to perform a “free-air” vehicle sniff around the vehicle. Sears testified that the dog gave a positive response at the rear of the vehicle on all three passes, specifically at the trunk and at the right rear corner panel. Sears also confirmed that a subsequent search of the vehicle’s trunk revealed a safe containing 4 kilos of cocaine.
 

 |/The dash-cam video recording from Sgt. Parker’s patrol unit was also introduced into evidence. The video begins at the 2:17:37 time mark on the camera’s clock with a rear view of a white Mercedes-Benz vehicle traveling in the left lane of a multilane highway. To the right can be seen the beginning of a row of concrete barriers set up on the right shoulder of the highway. The concrete barriers end at approximately 2:18:03 and at 2:18:19 the recording indicates Sgt. Parker’s activation of the patrol unit’s overhead lights. After the vehicles stop, Sgt. Parker is observed asking the driver to step out and meet him at the rear of the vehicle. Sgt. Parker asks the driver for his license and explains to “Mr. Morris” that he pulled him over for traveling in the left-hand lane of the highway for an extended period of time while not passing any vehicles. When Sgt. Parker asked Morris where they were coming from, he could not be any more specific than “Texas.” When Sgt. Parker indicated that Morris may have been weaving within his own lane, Morris told Sgt. Parker that he had been driving since “six,” apparently indicating 6:00 p.m. Sgt. Parker asked Morris to remain by the patrol unit while Sgt. Parker approached the front seat passenger of the car to get the registration. The passenger indicated to Sgt. Parker that Morris had only been driving a few minutes, and that the occupants of the vehicle were all coming from a family reunion in Texas. Sgt. Parker returned to Morris and asked him what they had been doing in Texas. Morris replied that they had been attending a wake for one of his cousin’s “home boys.” Both Morris and the passenger can be heard telling Sgt. Parker that the car belonged to an individual named “Eric,” who was not with them in the vehicle.
 

 
 *1282
 
 lüAt this point in the video, Sgt. Parker asked Morris to wait for him at the rear of the Mercedes while Sgt. Parker entered the patrol unit and called for histories on Antonio Morris (the driver) and Carlos Smith (the front seat passenger). Sgt. Parker can be heard talking about the nervousness of the two individuals and their inconsistent stories about where they had been. Sgt. Parker also marvels at the fact that the driver is not aware of the location in Texas from which he was coming. While dispatch cannot be heard, Sgt. Parker states that both Morris and Smith have criminal histories involving narcotics and resisting arrest, and in Smith’s case, resisting arrest with violence. Sgt. Parker is heard requesting backup before he exits the vehicle. He then explains to Morris the traffic citation which Sgt. Parker was issuing to him.
 

 According to the camera clock, the portion of the stop dealing with the issuance of the traffic citation is completed at 2:40 a.m. Shortly before the completion, a backup officer is observed walking in front of the camera. At that point, Sgt. Parker asks Morris for permission to search the vehicle, which Morris refuses. Sgt. Parker communicates the refusal to the other officers who have arrived. The officers then ask all the occupants to exit the vehicle while they wait for the K-9 unit to arrive. While they wait, the occupants of the vehicle can be heard questioning officers about whether they are under arrest. They are told they are not, but that the vehicle is being detained pending the arrival of the drug dog. One of the occupants can also be heard requesting his phone which he tells officers is in the back seat of the vehicle. The audio portion of the video indicates that an officer responded to the 1 ^request by retrieving the phone from the vehicle, although the particular actions of the officer regarding the vehicle are not visible on the recording.
 

 While the visibility is bad due to darkness and moisture on the patrol unit windshield, the K-9 dog is first visible on the camera at approximately 3:22 a.m. After the K-9 officer informs Sgt. Parker that the dog alerted on the rear of the vehicle, Sgt. Parker conducts a search of the Mercedes. In the course of trying to gain access to the trunk of the vehicle, Sgt. Parker is heard to have discovered Lee’s driver’s license in the backseat of the vehicle. Once officers finally gain access to the trunk they can be heard talking about finding a Century safe to which they gain access at approximately 3:47 a.m.
 

 After taking the matter under advisement for the viewing of the dash-cam video, the trial judge issued his ruling denying the motion to suppress. In his reasons, the judge noted that the inconsistent statements given by the driver and passenger of the vehicle, them nervousness, the driver’s lack of knowledge about where his travels began, the eight air fresheners, and the drug-related criminal histories of the occupants “all g[a]ve rise to the probable cause to conduct the warrantless search and seizure.”
 

 On January 25, 2011, the defendant entered a
 
 Crosby
 
 plea to the charge of possession of with intent to distribute 400 grams or more of cocaine, specifically reserving his right to appeal the denial of his motion to suppress. The plea was entered pursuant to an agreed sentence of 15 years at hard labor, which the trial court imposed after the defendant waived any sentencing delays. The state also
 
 nol prossed
 
 the conspiracy charge pending against the defendant under a separate docket number. The instant appeal followed.
 

 |
 
 tDiscussion
 

 Lee argues that the initial stop of the vehicle was illegal as no traffic law violation had occurred. Defendant does not deny that his vehicle was traveling in the
 
 *1283
 
 left-hand lane. Yet, he insists that the defendants were traveling in the left lane through the area with barricades on the right shoulder of the road, which made the officer’s suspicion of a traffic violation unreasonable. Lee also asserts that even if the traffic stop was justified, the trooper had no basis to detain him beyond the period necessary to issue the traffic citation. He argues that the past criminal records of the driver and front seat passenger alone did not satisfy the reasonable suspicion requirement for the lengthy detention. Finally, the defendant argues that the officer’s conduct in searching the trunk of the vehicle without a warrant was not constitutionally valid as a search incident to a lawful arrest under
 
 Arizona v. Gant,
 
 556 U.S. 332, 129 S.Ct. 1710, 1723-1724, 173 L.Ed.2d 485 (2009).
 

 The state bears the burden of proof when a defendant files a motion to suppress evidence obtained without a warrant. La.C.Cr.P. art. 703(D). A trial court’s denial of a motion to suppress is afforded great weight and will not be set aside unless a preponderance of the evidence clearly favors suppression.
 
 State v. Khalfani,
 
 43,647 (La.App.2d Cir.10/29/08), 998 So.2d 756,
 
 writ denied,
 
 09-0267 (La.11/6/09), 21 So.3d 305;
 
 State v. Pena,
 
 43,321 (La.App.2d Cir.7/30/08), 988 So.2d 841.
 

 The right of every person to be secure in his person, house, papers and effects against unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution and by Article I, § 5, of the 1974 |sLouisiana Constitution. It is well settled that a search and seizure conducted without a warrant issued on probable cause is
 
 ;per se
 
 unreasonable unless the warrantless search and seizure can be justified under one of the narrowly drawn exceptions to the warrant requirement.
 
 State v. Thompson,
 
 02-0333 (La.4/9/03), 842 So.2d 330;
 
 State v. Tatum,
 
 466 So.2d 29 (La.1985);
 
 State v. Lawrence,
 
 45,061 (La.App.2d Cir.3/3/10), 32 So.3d 329,
 
 writ denied,
 
 10-0615 (La.10/8/10), 46 So.3d 1265.
 

 The purpose of limiting warrantless searches to certain recognized exceptions is to preserve the constitutional safeguards provided by a warrant, while accommodating the necessity of warrantless searches under special circumstances.
 
 Donovan v. Dewey,
 
 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981);
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
 

 The authority and limits of the Fourth Amendment apply to investigative stops of vehicles.
 
 United States v. Sharpe,
 
 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985);
 
 United States v. Hensley,
 
 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). The stopping of a vehicle and the detention of its occupants is a seizure within the meaning of the Fourth Amendment.
 
 State v. Birgans,
 
 45,982 (La.App.2d Cir.1/26/11), 57 So.3d 478;
 
 State v. Lawrence, supra; State v. Khalfani, supra; State v. Pena, supra.
 

 The standard for evaluating a challenge to a routine warrantless stop for violating traffic laws is the two-step formulation articulated in
 
 Terry v. Ohio. State v. Birgans, supra; State v. Lawrence, supra; State v. Khalfani, supra; State v. Pena, supra.
 
 The court must determine whether the officer’s action was justified at its inception and whether it was reasonably related in scope to 10the circumstances which justified the interference in the first place.
 
 Terry v. Ohio, supra.
 

 For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred or is about to occur.
 
 State v. Birgans, supra; State v. Law
 
 
 *1284
 

 rence, supra; State v. Khalfani, supra; State v. Pena, supra.
 
 When determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer.
 
 State v. Huntley,
 
 97-0965 (La.3/13/98), 708 So.2d 1048. In stopping a vehicle on reasonable suspicion, an officer has the right to conduct a routine license and registration check and may engage in conversation with the driver and any passenger while doing so.
 
 State v. Lopez,
 
 00-0562 (La.10/30/00), 772 So.2d 90;
 
 State v. Lawrence, supra; State v. Khalfani, supra.
 

 If a police officer observes a traffic infraction, the subsequent stop for that offense is clearly legal; the standard is a purely objective one that does not take into account the subjective beliefs or expectations of the detaining officer.
 
 State v. Landry,
 
 98-0188 (La.1/20/99), 729 So.2d 1019;
 
 State v. Stowe,
 
 44,815 (La.App.2d Cir.10/28/09), 25 So.3d 945. This objective standard is indifferent to the relatively minor nature of a traffic violation.
 
 State v. Stowe, supra.
 

 The particular traffic statute involved in this stop was La. R.S. 32:71(B), which provides in pertinent part:
 

 (l)(a) Upon all multilane highways, no vehicle shall be driven in the left-hand lane except when directed otherwise, | ^preparing for a left turn at an intersection or private road or driveway, overtaking or passing another vehicle proceeding in the same direction, or when right-hand lanes are congested; however, no vehicle being driven in the left lane except when directed otherwise or preparing for a left turn at an intersection, private road, or driveway shall impede any other vehicle that is traveling in the same lane and behind that vehicle.
 

 (b) Upon all multilane highways, no vehicle traveling in the left-hand lane shall be driven at a speed slower than any vehicle traveling to its right on the same roadway.
 

 (c) Upon all multilane highways any vehicle proceeding at less than the normal speed of traffic at the time and place and under the circumstances then existing, shall be driven in the right-hand lane then available for traffic except when preparing for a left turn at an intersection or into a private road or driveway, or passing or overtaking a vehicle proceeding in the same direction, if passing on the left side of it. Nothing herein contained shall be construed to authorize driving any vehicle in the left lane so as to prohibit, impede, or block passage of an overtaking vehicle in such lane and in such event the vehicle in the left lane prohibiting, impeding, or blocking passage of an overtaking vehicle shall expeditiously merge into the right lane of traffic.
 

 Regarding the temporary questioning of persons in public places, La.C.Cr.P. art. 215.1(D) provides:
 

 During detention of an alleged violator of any provision of the motor vehicle laws of this state, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation,
 
 absent reasonable suspicion of additional criminal activity.
 

 (Emphasis added).
 

 If the police officer has a specific suspicion of criminal activity, he may further detain the individual or the property while he diligently pursues a means of investigation likely to quickly confirm or dispel the particular suspicion.
 
 State v. Stowe, supra, citing United States v. Sharpe, supra.
 
 In order to further detain
 
 *1285
 
 a suspect, however, the officer must have articulable facts giving rise to a reasonable suspicion of some separate illegal activity that Inwould justify further detention of the suspect.
 
 State v. Kalie,
 
 96-2650 (La.9/19/97), 699 So.2d 879. In making that determination, the totality of the circumstances must be taken into account.
 
 Id.
 
 The circumstances must be judged by an objective standard such that the facts available to the officer at the moment of seizure or the search would warrant a man of reasonable caution in the belief that the action taken was appropriate.
 
 Id.
 
 There is no bright line rule for when a detention lasts too long and each instance must be assessed in view of the surrounding circumstances.
 
 State v. Arnold,
 
 34,194 (La.App.2d Cir.12/06/00), 779 So.2d 840. Factors which may give rise to reasonable suspicion include the demeanor of the suspect and unlikely and inconsistent accounts regarding travels.
 
 State v. Miller,
 
 00-1657 (La.10/26/01), 798 So.2d 947;
 
 State v. Kalie, supra; State v. Birgans, supra; State v. Lawrence, supra; State v. Pena, supra.
 
 The presence of an air freshener on a vehicle has also been considered a factor which may give rise to reasonable suspicion.
 
 State v. Thompson,
 
 543 So.2d 1077 (La.App. 2d Cir.1989),
 
 writ denied,
 
 551 So.2d 1335 (La.1989). Outstanding warrants and criminal records may also be considered in this inquiry.
 
 State v. Khalfani, supra; State v. Pena, supra.
 

 The use of a drug dog as a means of investigation is one way to confirm or dispel the officer’s reasonable suspicion.
 
 State v. Kalie, supra, citing, United States v. Sharpe, supra.
 
 The dog’s sniff test of the vehicle’s exterior surfaces does not itself constitute a search.
 
 Id.
 
 However, at the moment the dog alerts to the interi- or of the vehicle, officers have probable cause to search the car.
 
 State v. Lopez, supra; State v. Kalie, supra.
 
 The Fourth Amendment |12aIlows police to search a vehicle absent a warrant if a car is readily mobile and probable cause exists to believe it contains contraband.
 
 State v. Lopez, supra; State v. Kalie, supra.
 

 Regarding the initial traffic stop in this case, Sgt. Parker testified that he observed the vehicle traveling in the left-hand lane for approximately two miles at a speed anywhere from 10 to 15 miles per hour slower than the posted speed limit. He never observed the vehicle passing any traffic in the right-hand lane. Part of the time the vehicle was traveling in the left-hand lane, there were construction barricades lined up on the right shoulder of the road. He testified that after he had followed the vehicle for approximately one mile, he activated his dashboard camera to record the violation. The video depicts what appears to be a white Mercedes-Benz traveling in the left-hand lane of a multilane highway. As the video begins, there are no barricades on the right shoulder of the road, although they begin almost immediately thereafter. The video also shows that for at least 15 seconds after the barricades end, the vehicle failed to move into the right-hand lane of travel. Additionally, the video later revealed Sgt. Parker expressing his concerns regarding an erratic motion or weaving of the vehicle.
 

 Under the facts, probable cause for a traffic violation under La. R.S. 32:71(B) existed, and Morris was ultimately ticketed for that violation. The caution barriers on the shoulder did not prevent the normal traffic flow in the right-hand lane of the interstate highway. Morris drove in the left-hand lane throughout a two-mile stretch, before and after the barriers, in violation of the statute. Moreover, objective reasonable suspicion of substandard driving |1sexisted by the slow speed and partial weaving which the officer observed. Thus, we find no merit in Lee’s argument that the traffic stop was
 
 *1286
 
 unlawful in violation of the Fourth Amendment.
 

 Lee argues, however, that Sgt. Parker did not have a basis for reasonable suspicion of additional criminal activity to justify the extended 35^10-minute detention, following the issuance of the traffic citation. The factors which Sgt. Parker identified, for his suspicion of possible drug courier activity were:
 

 • The nervousness of Morris;
 

 • The varying and incomplete accounts of the defendants’ trip to and from Texas;
 

 • The varying accounts of Morris’s length of time in driving the vehicle;
 

 • The multiple air fresheners in the vehicle;
 

 • The ownership of the vehicle by a party who was not traveling with the defendants in the cross-country trip; and
 

 • The prior criminal records of Morris and Smith involving illegal drugs.
 

 These facts allowed a permissible shift in the trooper’s focus and were adequate to create a reasonable suspicion of separate illegal drug activity.
 

 In detaining the occupants of the vehicle, the officer diligently pursued a means to investigate by calling for the K-9 unit that would likely dispel or confirm his suspicions. The trooper’s decision to call for the dog justified the extension of the duration of the stop.
 
 State v. Birgans, supra.
 
 While it took approximately 35-40 minutes for the drug dog to arrive, there is no indication that the delay was the result of any lack of diligence on the part of the investigating officers. Sgt. Parker testified that he communicated the refusal to consent immediately to another officer who then placed a call for the K-9 l^unit. Much of the delay was apparently caused by the transporting of the animal to the scene.
 

 In
 
 State v. Miller, supra,
 
 the officer stopped the driver of a vehicle after observing her cross the right-hand fog lane of a highway. The officer stopped the driver for reasons of public safety with no intent to issue a citation. Nevertheless, the officer ran a routine license and registration check and conversed with the driver. The driver’s nervous demeanor and inconsistent explanations for her travels, as well as her presence in a car rented by a person with an arrest for possession of marijuana, were held to create reasonable suspicion in the officer sufficient to justify an extension of the original stop and the request for permission to search the vehicle. When the driver refused consent, the officer dispatched a drug dog which arrived on the scene some 34 minutes later. The stop, which approached an hour, was held by the court to be a lawful investigatory stop that “reasonably correlated with the escalating level of suspicion as the officers pursued a means of investigation likely to confirm or dispel the trooper’s suspicions without unnecessary delay.” In support of the holding, the per curiam opinion cited
 
 United States v. Owens,
 
 167 F.3d 739 (1st Cir.1999) which upheld a 50-minute investigatory stop and
 
 United States v. McCarthy,
 
 77 F.3d 522 (1st Cir.1996), which affirmed a 75-minute investigatory stop as reasonable.
 

 Considering this jurisprudence and the totality of the circumstances involved in the present matter, we find no error in the trial court’s determination that the officers had a basis for reasonable suspicion of additional criminal activity and for extending the stop and maintaining the | lsstatus quo until the K-9 unit arrived to confirm or dispel the officer’s suspicions. Thus, this portion of Lee’s argument is without merit.
 

 Finally, once the drug dog alerted on the vehicle, a fact unchallenged on ap
 
 *1287
 
 peal or during the motion to suppress, the officers had probable cause to search the vehicle without first obtaining a warrant. Lee’s reliance on
 
 Gant, supra
 
 in his final argument is misplaced in that the case limits the circumstances under which and the extent to which officers can search the
 
 passenger compartment
 
 of a vehicle incident to a lawful arrest. The warrantless search of the vehicle
 
 trunk
 
 in the instant case was based upon probable cause to suspect the presence of the narcotics provided by the trained drug dog’s open air alert and the exigent circumstances which arose from the detention of the vehicle on the open road.
 
 State v. Kalie, supra.
 
 This assignment is therefore without merit.
 

 Conclusion
 

 For the foregoing reasons, the denial of Lee’s motion to suppress is affirmed. The defendant’s conviction and sentence are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . In accordance with
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976).