PITMAN, J.
| defendant, Anthony Ray Williams, pled guilty to one count of possession with intent to distribute a Schedule I controlled dangerous substance. He was charged in connection with a traffic stop during which 120 + pounds of marijuana were found in a car with Defendant and the driver, David Harrison (“Harrison”). Defendant’s later request to withdraw his guilty plea was denied by the trial court. He then entered a Crosby plea, reserving the right to appeal the district court’s denial of his motion to suppress, and pled guilty in accordance with a plea agreement. He was subsequently sentenced to 20 years at hard labor. Defendant now appeals. For the following reasons, Defendant’s conviction and sentence are affirmed.

FACTS

While on patrol on 1-20 in Bossier Parish on October 29, 2009, Louisiana State Trooper Brent Peart observed a white Volkswagen Jetta cross the fog line. He drove closer to inspect the vehicle’s license plate, but was unable to read it clearly because a cover on top of the license plate obscured the “outskirts” of the plate. He subsequently stopped the vehicle and in *1025 structed the driver to step outside and to the rear of the vehicle.
Harrison, the driver of the vehicle and Defendant’s codefendant, told Trooper Peart that they were driving from Houston, Texas, to Birmingham, Alabama, for a wedding and that the vehicle belonged to his niece. Trooper Peart noted that Harrison avoided eye contact with him and that his hands were trembling when he handed over his driver’s license.
1 ¡/Trooper Peart instructed Harrison to remain standing in front of his police unit while he separately questioned the passenger about their itinerary and the ownership of the vehicle. Defendant was the sole passenger in the vehicle; he told Trooper Peart that he and Harrison were heading to Birmingham, Alabama, to visit some friends, that Harrison was his brother and that the car belonged to Harrison’s friend. Trooper Peart asked for Defendant’s driver’s license and testified at the motion to suppress hearing that Defendant avoided making eye contact with him, faced forward and was nervous, “fumbling with a lot of stuff in the car,” and kept “picking his phone up and down.”
Trooper Peart contacted the dispatcher to check the criminal background of both men and learned that the occupants shared a criminal history of narcotics offenses. Trooper Peart then requested backup from Louisiana State Trooper William Green, who subsequently arrived on scene. Trooper Peart returned the licenses to the occupants, issued a verbal warning and asked for consent to search the vehicle. Harrison stated that the car had nothing illegal in it, but refused to grant consent. Trooper Peart requested a drug dog from Bossier Parish to assist with the traffic stop, but the dog was unavailable. Trooper Peart then contacted Officer Danny Turner of the Minden Police Department and requested a K-9 unit.
Trooper Peart relocated the traffic stop to Goodwill Travel Plaza, a nearby location in Webster Parish, due to rain which had become heavier during the stop. As requested, Officer Turner arrived with the K-9 and the dog alerted to the presence of narcotics in the vehicle. After the alert, laTrooper Peart searched the vehicle and discovered four large bundles wrapped in wrapping paper in the trunk. Harrison and Defendant were subsequently arrested. The content of the bundles was a leafy green vegetable matter and Trooper Peart testified at the hearing on the motion to suppress that he believed the contents to be marijuana. The bundles were later revealed to be 123 lbs. of marijuana. The traffic stop and the detention were recorded by the dash camera in Trooper Peart’s police unit.
Both the photographs of the marijuana seized from the vehicle and a copy of Trooper Peart’s video recording were later introduced into evidence. The defense did not object to these exhibits.
On December 10, 2009, Defendant was charged by a bill of information with conspiracy to distribute a Schedule I Controlled Dangerous Substance, namely marijuana, in violation of La. R.S. 40:966(A)(1), for acts committed on October 29, 2009. On May 11, 2010, Defendant was charged by an amended bill of information with possession of a Schedule I Controlled Dangerous Substance, namely over 60 pounds of marijuana, with the intent to distribute, in violation of La. R.S. 40:966(A)(1)(F)(1)[1] (Count One); and conspiracy to distribute a Schedule I Controlled Dangerous Substance, namely marijuana, in violation of La. R.S. 40:966(A)(1) and La. R.S. 40:979 *1026 (Count Two) for acts committed on October 29, 2009.
On August 31, 2010, Harrison filed a motion to suppress the evidence of 123 lbs. of marijuana found in the trunk of the vehicle, alleging that the|4search which led to its discovery was illegal. Defendant joined in the motion to suppress. A hearing was held on January 18, 2011, wherein Trooper Peart testified as to the events leading up to Defendant’s arrest.
On February 15, 2011, the district court denied the motion to suppress and provided oral reasons. First, the court noted that the recording from the dash cam in Trooper Peart’s police unit did not show the Volkswagen traveling over the fog line, but begins at the inception of the traffic stop. The court noted that the video featured Trooper Peart informing Harrison that his license plate was obscured by the cover and Harrison responding with “Okay.” The court found merit in Trooper Peart’s testimony that the license plate was obscured and unreadable and determined the initial stop to be reasonable.
In determining whether the traffic stop could lead to the ultimate search of the vehicle, the court found that Harrison’s and Defendant’s conflicting stories about the ownership of the car and the purpose of the trip and their combined nervousness provided Trooper Peart with reasonable suspicion and justified his decision to contact the K-9 Unit.
On May 25, 2010, Defendant entered a plea of not guilty. On October 10, 2011, he withdrew his plea of not guilty and, in accordance with a plea agreement that eliminated the possibility of a multi-bill, entered a plea of guilty to Count One, possession of marijuana with intent to distribute over 60 pounds. The district court advised Defendant that the penalty for the crime would be imprisonment at hard labor for not less than 5 years, nor more than 30 years, and a fine of not less $50,000, nor more Rthan $100,000. After advising Defendant of his Boykin rights, the district court accepted his guilty plea as being voluntary and intelligently made. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
On February 7, 2012, Defendant filed a motion to withdraw his guilty plea stating that, when he originally entered it, he did not have sufficient contact with his attorney and he was also under the impression that Harrison would be testifying against him in exchange for a lesser sentence. The district court denied the motion. On April 10, 2012, Defendant entered a Crosby plea, reserving the right to appeal the district court’s denial of his motion to suppress, and pled guilty to the charge of possession of marijuana with the intent to distribute in accordance with the plea agreement. State v. Crosby, 338 So.2d 584 (La.1976). Defendant was subsequently sentenced to 20 years at hard labor.

DISCUSSION

Traffic stop, detention and search

In his first assignment of error, Defendant argues that he was illegally detained and that the marijuana evidence recovered from the search should have been suppressed. He emphasizes that both he and Harrison were detained for approximately 58 minutes after the initial stop, some 39 minutes after their licenses were returned and after the verbal warning for, any alleged traffic violations, and for approximately 29 minutes while waiting for the K-9 Unit to arrive at the Goodwill Travel Plaza. Defendant further states that Trooper Peart was not investigating the case or doing anything to further his investigation “for much of the 58 minutes” that he | fiwas illegally detained and that both he *1027 and Harrison should have been released at the conclusion of the initial investigation.
Defendant asserts that the inconsistent stories did not provide reasonable suspicion of criminal activity and emphasizes that, at the suppression hearing, Trooper Peart testified to smelling only fabric softener and not marijuana. Furthermore, Defendant states that his and Harrison’s behavior was attributable to the stressful situation and the cold, rainy weather.
The standard for evaluating a challenge to a routine warrantless stop for violating traffic laws is the two-step formulation articulated in Terry v. Ohio, 392 U.S. 1 (1968), 88 S.Ct. 1868, 20 L.Ed.2d 889; State v. Pena, 43,321 (La.App.2d Cir.7/30/08), 988 So.2d 841; State v. Sims, 40,300 (La.App.2d Cir.10/26/05), 914 So.2d 594. The court must determine “whether the officer’s action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.” United States v. Shabazz, 993 F.2d 431 (5th Cir.1993), quoting Terry v. Ohio, supra.
For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred or is about to occur, before stopping the vehicle. United States v. Sharpe, 470 U.S. 675 (1985), 105 S.Ct. 1568, 84 L.Ed.2d 605; State v. Pena, supra; State v. Sims, supra. Here, Trooper Peart witnessed Harrison cross over the fog line, in violation of La. R.S. 32:79, which requires vehicles to remain entirely within a single lane and not move from such lane until the driver has first ascertained that such movement can be made with safety. Further, the addition of the license plate cover to the vehicle was in violation of La. R.S. 47:507 and La. Admin. Code Title 55, pt. III, § 811(6), which state that a license plate should be free of foreign materials and readable for a distance of 50 feet from the rear of the vehicle. The dash cam video showed Trooper Peart pointed out this violation twice and Harrison agreed with this statement. The district court did not commit manifest error in finding that the traffic stop was justified at its inception.
It is apparent from the dash cam recording that the initial traffic stop transformed into an investigatory detention. During the detention of an alleged violator of any provision of the motor vehicle laws of this state, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity. La. C. Cr. P. art. 215.1(D).
There is no bright-line rule for determining when a lawful detention lasts too long. In assessing the reasonableness of an investigatory detention’s duration, the United States Supreme Court and Louisiana courts have focused on the diligence of the detaining officer(s):
In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation and in such cases the court should not indulge in unrealistic second guessing.
Is United States v. Sharpe, supra; State v. Turner, 13-0180 (La.3/1/13), 108 So.3d 753; State v. Dixon, 39,994 (La.App.2d *1028 Cir.9/21/05), 911 So.2d 372; State v. Arnold, 34,194 (La.App.2d Cir.12/6/00), 779 So.2d 840. The initial traffic stop for the driving violations was 18 minutes and 51 seconds long. Trooper Peart, relying on his training and experience, reasonably suspected the Defendant and Harrison were involved in further criminal activity. Trooper Peart questioned both occupants, collected their Texas driver’s licenses and promptly contacted the dispatcher for backup and for the criminal background checks. Most of the wait time is attributable to the dispatcher having to contact Texas authorities for the information regarding both Defendant and Harrison. The delay was not attributable to any lack of diligence on the part of Trooper Peart.
An officer does not need any degree of reasonable suspicion, as opposed to intuition or “hunch,” to ask for and receive consent to search a vehicle. State v. Strange, 04-0273 (La.5/14/04), 876 So.2d 39. In order to further detain a suspect, however, the officer must have articulable facts giving rise to a reasonable suspicion of some separate illegal activity that would justify further detention of the suspect. State v. Lee, 46,742 (La.App.2d Cir.12/14/11), 79 So.3d 1278. In making that determination, the totality of the circumstances must be taken into account. Id.
The question here is whether Trooper Peart had reasonable suspicion to detain the occupants after returning their licenses and issuing a verbal warning. Trooper Peart testified at the suppression hearing that the Rfoil owing behavior gave him reasonable suspicion of criminal activity: Harrison’s trembling hands and avoidance of eye contact; a strong odor of fabric softener or air freshener; Defendant’s nervousness, avoidance of eye contact and acts of facing forward, fumbling with things in the car and repeatedly picking up his phone; the conflicting stories of the occupants about the purpose of the trip and the ownership of the vehicle; and the shared criminal history of both occupants.
 Factors which may give rise to reasonable suspicion include the demeanor of the suspect and unlikely and inconsistent accounts regarding travels. State v. Miller, 00-1657 (La.10/26/01), 798 So.2d 947; State v. Pena, supra. The presence of an air freshener in a vehicle has also been considered a factor which may give rise to reasonable suspicion. State v. Thompson, 543 So.2d 1077 (La.App.2d Cir.5/10/89), writ denied, 551 So.2d 1335 (La.1989). Outstanding warrants and criminal records may also be . considered in this inquiry. State v. Khalfani, 43,647 (La.App.2d Cir.10/29/08), 998 So.2d 756, writ denied; State ex rel. Kamau v. State, 09-0267 (La.11/6/09), 21 So.3d 305; State v. Pena, supra.
It is apparent from the video recording that Harrison was nervous. He was extremely garrulous throughout the stop, communicating with his hands and supplying unnecessary information. Although Defendant’s actions were not visible because he remained seated in the car, the inconsistent accounts given by Harrison and Defendant regarding their travels, together with their shared criminal history, are factors defined in the law that give rise to reasonable suspicion. Furthermore, Trooper Peart’s testimony of |,nsmelling the scent of fabric softener aligns with the jurisprudence of drug couriers using aromatic fragrances of odor eliminating products to mask the scent of narcotics and is another factor that may give rise to reasonable suspicion. The combination of the facts allowed a permissible shift in Trooper Peart’s focus to reasonable suspicion of separate illegal drug activity. Thus, the district court did not commit manifest error in finding that there was reasonable *1029 suspicion to detain the occupants after the initial traffic stop.
Accordingly, this assignment of error is without merit.

Incomplete record

In his second assignment of error, Defendant states that the district court’s ruling on the motion to suppress was based on a review of the video and asserts that there is a gap in the video from the 19:10 time mark to the 28:86 mark. He acknowledges that he failed to object to this alleged defect, but asserts that this Court cannot conduct a review of the complete record in this appeal. Although the recording is not time-stamped, the district court recognized this fact and found the recording to be complete in its entirety. Based on an independent viewing of the video, we see no apparent alterations or deletions and the video is entirely complete. In addition, the defense counsel failed to object to this evidence at the hearing on the motion to suppress. La. C. Cr. P. art. 841 provides that an irregularity error cannot be availed of after verdict unless it was objected to at the time of the occurrence.
Accordingly, this assignment of error has no merit.
| nErrors patent
A review for errors patent revealed that the statutory language of La. R.S. 40:966, which defines the penalty for distribution or possession with intent to distribute Schedule I narcotic drugs, was misstated in an amended bill of information.
Defendant was charged by the following bill of information on December 10, 2009:
Count No. 1 — did commit the crime of conspiracy to distribute a Controlled Dangerous Substance, namely Marijuana [La. R.S. 40:966(A) ], contrary to La. R.S. 14:26.
Subsequently, Defendant was charged by the following amended bill of information on May 11, 2010:
Count No. 1 — did knowingly or intentionally possess a Schedule I Controlled Dangerous Substance (over 60 pounds of Marijuana) with intent to distribute in violation of the provisions of Louisiana Revised Statute 40:966(A)(1)(F)(1).
Count No. £ — did conspire to distribute a Schedule 1 Controlled Dangerous Substance (Marijuana) in violation of the provisions of Louisiana Revised Statute 40:966A(1) and 40:979.
Initially, Defendant entered a plea of not guilty. On October 10, 2011, Defendant withdrew his not guilty plea and entered a plea of guilty to possession of marijuana with intent to distribute over 60 pounds in accordance with a plea agreement. The following dialogue between Defendant and the court occurred during the Boykin colloquy:
The Court: The charge you’re pleading guilty is said to have occurred in Bossier Parish on or about October 29, 2009 and it’s that you knowingly or intentionally possessed a Schedule I | ^controlled dangerous substance said to be over 60 pounds of marijuana with the intent to distribute. Do you understand that, sir?
Defendant: Yes, sir.
The Court: The penalty for the crime that you’re pleading guilty to would be imprisonment at hard labor for not less than five years nor more than 30 years and a fine of not less than $50,000.00 nor more than $100,000. Do you understand that?
Defendant: Yes, sir.
The Court: Do you understand that this is a felony so by entering the plea of guilty you will have a felony conviction on your record and that could be used against you in the future as a basis for *1030 an increased sentence under our State’s habitual offender laws?
Defendant: Yes, sir.
As stated in the facts, the district court accepted Defendant’s guilty plea as being voluntary and intelligently made. Later, on April 10, 2012, Defendant entered a Crosby plea and pled guilty to his original terms, while reserving the right to appeal the district court’s denial of his motion to suppress. State v. Crosby, supra. A trial court may allow a guilty plea to be withdrawn at any time prior to sentencing. La. C. Cr. P. art. 559(A). A trial court’s ruling on the matter is subject to reversal only if the court abuses its discretion or is arbitrary. State v. Hall, 26,006 (La.App.2d Cir.5/4/94), 637 So.2d 645, writ denied, 94-1373 (La.9/30/94), 642 So.2d 868. The ^district court accepted this Crosby condition and sentenced Defendant to 20 years at hard labor for the charge of possession of marijuana with the intent to distribute. State v. Crosby, supra. He was not ordered to pay a fíne, nor was any part of the sentence imposed without the benefit of parole.
The issue here is that there is no such statute as La. R.S. 40:966(A)(1)(F)(1). The bill was never amended or corrected, orally or in writing; no motion to quash the bill of information was ever filed on Defendant’s behalf.
Jurisdictional defects, discoverable as errors patent on the face of the record, are those defects which, even conceding the accused’s factual guilt, do not permit his conviction of the offense charged. State v. Kendrick, 34,097 (La.App.2d Cir.12/20/00), 779 So.2d 884, rehearing denied, writ denied, 828 So.2d 563 (La.11/1/02). The accused cannot plead guilty to a crime with which he is not charged and the trial judge is without authority to accept such a plea. State v. Stevens, 452 So.2d 289 (La.App. 2d Cir.1984). However, the failure of the district attorney to amend the bill to conform to Defendant’s plea agreement cannot be considered to render the plea unintelligent or involuntary. State v. Jackson, 04-2863 (La.11/29/05), 916 So.2d 1015.
The sentence in this case would be legal if Defendant was convicted under La. R.S. 40:966F(1) or La. R.S. 40:966A(1).[2] La. R.S. 40:966(A)(1) |14requires that the first 5 years of a sentence be served without benefit of probation, parole or suspension of sentence. Although the district court did not specify that Defendant’s sentence would be served with the first 5 years to be without the benefit of probation, parole, or suspension of sentence, La. R.S. 15:301.1 serves as a “safety net” in ensuring that Defendant’s sentence automatically includes the provisions of La. R.S. 40:966. Thus, the “non-paroleable time” under La. R.S. 40:966(G) is automatically imposed. Although the bill of information was deficient, the transcript reflects that *1031 the district court read the penalty for a violation of La. R.S. 40:966(F)(1) to Defendant prior to his plea of guilty.
Defendant was not prejudiced by being sentenced under La. R.S. 40:966(F)(1) because the penalty is 5 to 30 years at hard labor and, thus, less than La. R.S. 40:966(A)(1)’s penalty of 5 to 50 years at hard labor. Effectively, Defendant pled to and was convicted of a violation of La. R.S. 40:966(F)(1). Based on the transcript, Defendant acknowledged his understanding of his waiver of his constitutional rights and the court accepted Defendant’s plea as being made voluntarily and intelligently. Defendant’s sentence of 20 years at hard labor is within the quoted range, and neither he nor the state has raised this issue. In addition, this Court is not required to impose the mandatory fine under La. C. Cr. P. art. 882(A) if Defendant was convicted under La. R.S. 40:966F(1). State v. Griffin 41,946 (La.App.2d Cir.5/2/07), 956 So.2d 199; State v. Price, 05-2514 (La.App.1st Cir.12/28/06), 952 So.2d 112, writ denied, 07-0130 (La.2/22/08), 976 So.2d 1277.

CONCLUSION

For the foregoing reasons, the conviction and sentence of Defendant, Anthony Ray Williams, are affirmed.
AFFIRMED.
SEXTON, J. (Ad Hoc) concurs, disagreeing with the errors patent treatment.

. As discussed later in this opinion, there is no such charge under Louisiana statute.

. La. R.S. 40:966F(1) provides that any person who knowingly or intentionally possesses 60 pounds or more, but less than 2,000 pounds, of marijuana, tetrahydrocannabinol or chemical derivatives thereof, or synthetic cannabinoids, shall be sentenced to serve a term of imprisonment at hard labor of not less than 5 years, nor more than 30 years, and to pay a fine of not less than $50,000, nor more than $100,000.
La. R.S. 40:966A(1) provides that it is unlawful for any person knowingly or intentionally to produce, manufacture, distribute or dispense a controlled dangerous substance classified in Schedule I and, upon conviction, shall be sentenced to imprisonment for not less than 5 years and no more than 50 years at hard labor, with at least 5 years to be served without benefit of probation or suspension of sentence, and may, in addition, be required to pay a fine of not more than $50,000.