LOLLEY, J.
hThis criminal appeal arises from the 26th Judicial District Court, Parish of Bossier, State of Louisiana, David J. Manning pled guilty to possession of methamphetamine, a violation of La. R.S. 40:967(C), while reserving the right to appeal the trial court’s denial of his motion to suppress. Manning’s other charges were dismissed, and he was sentenced to five years’ imprisonment at hard labor, to run concurrent with any other sentences. .For the following reasons, we affirm the trial *629 court’s judgment on the initial motion to suppress, but remand this case to the trial court,
FACTS
On November 9,2013, David J. Manning was driving a dark colored Ford Taurus east on Interstate 20 in Bossier Parish. Louisiana State Trooper Nathan Sharbono observed Manning cross the white fog line, and signaled him to pull over. Ivory Jenkins, Shatakwae Moore, and Moore’s four-year-old child were passengers in the car. Manning did not have a driver’s license or any paperwork for the car he was driving; it had been rented by Manning’s sister, who was not present. After hearing the story of Manning’s travel itinerary and checking Manning’s ‘driving record and criminal history, Trp. Sharbono called for assistance from the canine unit. Manning refused to consent to a search of the car, and the canine unit conducted' a sniff of its exterior.[1] After the dog alerted, the troopers searched the interior of the car and found a bag of assorted colored pills under the front passenger seat. Manning, Jenkins, and Moore were arrested.
j aThey were all subsequently charged by bill of information with possession of a schedule I controlled dangerous substance, a violation of La. R.S. 40:966(0(3), possession of a schedule II controlled dangerous substance, a violation of La. R.S. 40:967(C), and conspiracy to distribute a controlled dangerous substance, a violation of La. R.S. 40:979 and La’ R.S. 14:26. Manning was also charged with improper lane usage and driving without a license. The bill of information was subsequently amended twice to reflect the test results on the substances found in the car.
Manning filed a motion to suppress, challenging the legality of the vehicle stop and subsequent search. On October 28, 2014, a hearing for that motion was held, in which Louisiana State Troopers Sharbo-no, Chris Wright, and Herschel Smith were called to testify. Trooper Smith was only present for backup, stood with Jenkins and Moore, and did not assist in conducting the search.
Trooper Sharbono testified that he observed Manning cross the fog line. He then signaled Manning to pull over by turning on his lights, and simultaneously began[1] video recording the traffic stop. Trooper Sharbono stated that it was not his practice to immediately write a citation when a stop was made, but instead he would talk with the driver prior to issuing a citation. After speaking with the two passengers, Trp. Sharbono checked Manning’s driving record and criminal history. He noted that the car had been rented in Texas, and stated that because the person who rented the car was not present and Manning was unable to ..produce any paperwork related to the rental, he was unable to determine, if Manning had authority to Ispperate the car or if the car was authorized for out-of-state travel. Trooper Shar-bono stated the reason he asked for Manning’s consent to search the vehicle was because of his suspicions that other criminal activity might be taking place based on Manning’s lack of identification, “not normal” travel arrangements, the . lack of paperwork for the Ford Taurus, and Manning’s criminal record.
Trooper Sharbono further testified that it is standard practice for backup to respond when a criminal history search is requested. He stated that the canine unit was probably at the scene as the backup *630 unit, even before Manning refused consent to search. Trooper Sharbono denied that the canine alert was the sole basis for a search of the car, again citing Manning’s suspicious travel itinerary, lack of paperwork for the car, lack of personal identification, and criminal history. However, Trp. Sharbono admitted that, without the canine alert, he would not have had probable cause to conduct the search of the car’s interior.
Louisiana State Trooper Chris Wright, certified canine handler, conducted a passive, free-air sniff of the exterior of the vehicle. Trooper Wright testified that his dog indicates by passive alert, which means he sits, changes his body posture and breathing, and perks up his ears to alert in the presence of a trained odor. The dog alerted at the rear passenger door of the vehicle, which then gave the officers probable cause to search the car’s interior. Based on the totality of the circumstances and the testimony presented, the trial court denied the motion to suppress.
LA second motion to suppress was filed on June 16, 2015. Manning challenged the legality of the search of the car under Rodriguez v. United States, — U.S. —, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015). The state objected to a hearing, arguing that Manning was not entitled to a second motion to suppress. Manning noted that his second motion to suppress did not challenge the legality of the stop itself, but only the duration of the stop. The trial court stated willingness to allow Manning to bring a second motion to suppress under Rodriguez, supra, and agreed that a hearing would be conducted at a later date so that the state could present the testimony of officers.
The state made a plea offer, which if not accepted, would be withdrawn on the following day. Manning accepted the offer and pled guilty to possession of methamphetamine, reserving his right to appeal the denial of his motion to suppress. Even though it was never reviewed during the hearing, the video of the traffic stop was admitted • into evidence to be considered part of Manning’s appeal. Manning was sentenced, pursuant to the plea agreement, to five years’ imprisonment at hard labor, and the remaining charges were dismissed. The trial court did not rule on Manning’s second motion to suppress. This timely appeal followed.
DISCUSSION
In his sole assignment of error, Manning argues that the trial court erred in denying his motion to suppress, but makes no distinction between the initial and second motion to suppress. He contends that Trp. Sharbono kept him on the side of the road while making no effort to write a citation in | sorder to create a delay to allow for the arrival of the canine unit. Manning also contends that officers did not have probable cause to search the car he was driving, and the questions asked by Trp. Sharbono were unrelated to the alleged offense of crossing the fog line.

The Initial Motion to Suppress

This court reviews the trial court’s ruling on a motion to suppress under the manifest error standard in regard to factual determinations, as well as credibility and weight determinations, while applying a de novo review to findings of law. State v. Delvalle, 46,563 (La.App.2d Cir.09/21/11), 73 So.3d 1026. A trial court’s denial of a motion to suppress is afforded great weight.and will not be set aside unless a preponderance of the evidence clearly favors suppression. State v. Khalfani, 43,647 (La.App.2d Cir.10/29/08), 998 So.2d 756, writ denied, 2009-0267 (La.11/06/09), 21 So.3d 305.
*631 The right of every person to be secure in his person, house, papers and effects against unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution and by Article I, § 5, of the 1974 Louisiana Constitution. It is well settled that a search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless search and seizure can be justified under one of the narrowly drawn exceptions to the warrant requirement. State v. Thompson, 2002-0333 (La.04/09/03), 842 So.2d 330; State v. Tatum, 466 So.2d 29 (La.1985); State v. Lawrence, 45,061 (La.App.2d Cir.03/03/10), 32 So.3d 329, writ denied, 2010-0615 (La.10/08/10), 46 So.3d 1265. The purpose of limiting warrantless searches to certain recognized exceptions is to preserve the constitutional safeguards provided by a warrant, while accommodating the necessity of warrantless searches under special circumstances. Donovan v. Dewey, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981); State v. Thompson, supra.
The authority and limits of the Fourth Amendment apply to investigative stops of vehicles. U.S. v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); U.S. v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). The stopping of a vehicle and the detention of its occupants is a seizure within the meaning of the Fourth Amendment. State v. Burney, 47,056 (La.App.2d Cir.05/23/12), 92 So.3d 1184, writ denied, 2012-1469 (La.01/11/13), 106 So.3d 548. The standard for evaluating a challenge to a routine warrantless stop for violating traffic laws is a two-step formulation: the court must determine “whether the officer’s action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.” Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); State v. Pena, 43,321 (La.App.2d Cir.07/30/08), 988 So.2d 841.
For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred or is about to occur, before stopping the vehicle. U.S. v. Sharpe, supra; State v. Burney, supra. If a police officer observes a traffic infraction, the subsequent stop for that offense is clearly legal; the | standard is a purely objective one that does not take into account the subjective beliefs or expectations of the detaining officer. State v. Lee, 46,742 (La.App.2d Cir.12/14/11), 79 So.3d 1278. This objective standard is indifferent to the relatively minor nature of a traffic violation. Id. In Louisiana, as in other jurisdictions, a car which partially leaves its lane of travel and crosses the fog line either at the center of a divided highway or on the right hand shoulder of the road provides the police with probable cause to believe that a traffic violation for improper lane use has occurred. State v. Waters, 2000-0356 (La.03/12/01), 780 So.2d 1053.
In stopping á vehicle on reasonable suspicion, an' officer has the right to conduct a routine license and registration check and may engage in conversation with the driver and any passenger while doing so. State v. Lee, supra. If a police officer has a specific suspicion of criminal activity, he may further detain the individual or the property while he diligently pursues a means of investigation likely to quickly confirm or dispel the: particular suspicion. State v. Burney, supra. In order to further detain a suspect, however, the officer must have articulable facts giving rise to a reasonable suspicion of some separate illegal activity that would justify *632 further detention of the suspect. State v. Williams, 47,750 (La.App.2d Cir.04/10/13), 112 So.3d 1022; State ex rel. Williams v. State, 2013-1394 (La.12/02/13), 126 So.3d 502. In making that determination, the totality of the circumstances must be taken into account. Id, The circumstances must be judged by an objective standard such that the facts available to the officer at the moment of seizure or the search would warrant a man of reasonable caution in the belief that the action taken was appropriate. State v. Lee, supra, There is no bright line rule for when a detention lasts too long and each instance must be assessed in view of the surrounding circumstances. Id, Factors which may give rise to' reasonable suspicion include the demeanor of the suspect and unlikely and inconsistent accounts regarding travels. State v. Miller, 2000-1657 (La.10/26/01), 798 So.2d 947; State v. Lee, supra.
The use of a drug dog as a means of investigation is one way to confirm or dispel the officer’s reasonable suspicion. State v. Burney, supra. A dog sniff of the vehicle’s exterior surfaces is not a “search” under the meaning of the Fourth Amendment. United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). However, at the moment the dog alerts to the interior of the vehicle, officers have probable cause to search a vehicle without first obtaining a warrant. State v. Lee, supra.
In State v. Lee, supra at 1286, this court found that officers had a basis for reasonable suspicion of additional criminal activity, and-for extending the stop until a canine unit arrived to confirm or dispel officers’ suspicions. The officer identified six factors which aroused his suspicion of possible drug courier activity, after making a valid traffic stop: nervousness of the driver, varying accounts of the trip, varying accounts of the length of the trip, multiple air fresheners in the vehicle, ownership of the vehicle by a party who was not present, and the prior criminal record of the driver. Id.
Here, Manning pled guilty to possession of methamphetamine, with an agreed-upon sentence. A defendant normally waives any nonjurisdictional error by his plea of guilty. However, Manning’s guilty plea was entered with a reservation of the right to appeal specific pretrial proceedings under State v. Crosby, 338 So.2d 584 (La.1976). At the time of his plea, the state noted Manning’s reservation as limited to “the ruling on the motion to suppress that was done previously.” The record reveals the trial court only issued a ruling on the initial motion to suppress, and we affirm that ruling.
Regarding the traffic stop in this case, the evidence presented at the motion hearing on October 28, 2014, showed that Tpr. Sharbono observed Manning’s vehicle cross the fog line and that Manning was ultimately, ticketed for that violation. The defendant does not dispute that probable cause existed for the traffic violation and stop. However, Manning maintains Trp. Sharbono’s suspicions of other criminal activity were unfounded.
In stopping Manning for the traffic violation, Trp. Sharbono had a right to conduct a routine license and registration check and to engage in conversation with Manning and his passengers. In the trial court’s oral reasons for its findings it noted:
Mr. Manning had no identification. He stated he caught a ride to Houston.... The rental papers of the car and the person who rented the car was not there. There was no documentation. There was no paperwork on the car or a rental agreement according to Trooper Sharbono’s testimony. He did a crimi *633 nal records check; found that Mr. Manning had several prior .arrests. And he believed that based on Mr. Manning’s statements and all the surrounding information that there was a possibility that a crime had been committed. He stated he did not know if the car had been stolen, taken across Texas lines without the proper rental agreement. Stated he did not know if there was other possibilities of other crimes. '
| ipThe trial court found that Trp. Sharbono had objectively reasonable suspicion of the possibility of some sort of other illegal activity in order to justify further detaining Manning. These articulable facts justified calling the canine unit as a means to dispel or confirm his suspicions. Once the dog alerted the troopers, they had probable cause to search the vehicle. Based on the totality of the circumstances, the trial court denied Manning’s initial motion to suppress. We affirm the trial court’s ruling on-the. initial motion to suppress.

Second Motion to. Suppress

Although Manning.does not specifically state that he is appealing a disposition on the second motion to suppress, his- arguments on appeal appear to be directed toward that motion. Manning argues that the Rodriguez, supra, decision did not change the law, but maintains it is applicable in his case regarding the duration of the stop. He maintains he was kept waiting on the side of the road for the purpose of conducting a search and not for the legitimate purpose of writing a ticket. Manning further argues the duration of the time spent waiting for,the canine unit to arrive was unreasonable.
The question recently presented to the United States Supreme Court in Rodriguez, supra, was “whether police routinely may extend an otherwise completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff.” In Rodriguez, the initial traffic stop was initiated because the vehicle was driving on the shoulder of the road. The officer completed the traffic stop and issued a citation in about 21 minutes.1 After the citation was fyissued, the officer detained the defendant while waiting -for the canine unit to arrive. After a sniff test1'and search of the vehicle a large bag of methamphetamine was discovered. The court held that it was a violation of the Fourth Amendment to detain the defendant after the citation was issued, and further noted ¡that an officer “may conduct certain unrelated checks during an otherwise lawful traffic stop,” but may not prolong the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.. Id. at 1615. The court cautioned that “the critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket, ..., but whether conducting the sniff ‘prolongs’ — i.e., adds time to — ‘the stop.’ ” Id. at 1616.
In State v. Prince, 50,548 (La.App.2d Cir.04/13/16), 195 So.3d 6, this court did not conduct an analysis of Rodriguez, supra, other than to note that the trial court distinguished the facts of Rodriguez from Prince’s case. In Prince, supra, the trial court determined that, based upon observations of the defendant’s nervous behavior and the distinct odor of marijuana, officers had reasonable suspicion that drugs would be found inside the vehicle. The defendant was detained for approximately 15-20 minutes prior to the arrival of a canine unit, which was within the time generally allotted for a routine traffic stop. Id.
The Federal Fifth Circuit has also emphasized that Rodriguez, supra, is inapplicable once reasonable suspicion is established. See U.S. v. Davis, 14-50974 (5th Cir.08/19/15), 620 Fed.Appx. 295 (holding *634 that Rodriguez has limited relevance in cases in which reasonable suspicion has been [ ^established). Furthermore, the rule does not disrupt this court’s decision in State v. Burney, supra, holding: “where there is reasonable suspicion -that criminal activity is afoot, a traffic stop may be extended to allow a police officer to continue to investigate the matter more thoroughly.”
In Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the United States Supreme Court laid out the framework to be used in determining whether a rule announced in an opinion should be applied retroactively to judgments in criminal cases that are already final on direct review. Under the Teague framework, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review. A new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a “ ‘watershed rul[e] of criminal procedure’ implicating the fundamental fairness and accuracy of the criminal proceeding.” Whorton v. Bockting, 549 U.S. 406, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007). Even if the holding-in Rodriguez, supra, is retroactive under the Teague framework, searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule. Davis v. U.S., 564 U.S. 229, 231, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011).
On July 8, 2015, a hearing was held concerning whether to allow the filing of Manning's sécond motion to suppress. The state argued against hearing this motion because Manning’s initial motion had already been denied. The trial court stated a willingness to hear Manning’s second motion in light of the recent decision in Rodriguez, supra. Defense counsel | ^indicated that the testimony regarding the second motion to suppress would have been essentially the same as the testimony offered at the hearing on the initial motion to suppress. According to the record, the trial court informed Manning that it had already found that the troopers had reasonable suspicion of other criminal activity, and it would review the video recording of the stop only to determine if the duration of time spent waiting for the canine unit to arrive was unreasonable. However, before the trial court ruled on the second motion, Manning accepted the plea deal from the state.
The motion for appeal noted that Manning’s guilty plea was entered subject to review of pretrial rulings, “specifically including but not necessarily limited to the defendant’s motion to suppress heard on October 28, 2014, and the motion to suppress filed on June 16, 2015.” The record reflects that defense counsel asserted during the hearing that Manning was reserving the right to appeal the ruling on the second motion to suppress. It is unclear whether defense counsel agreed, and Manning understood, that the right to appeal the ruling on the initial motion to suppress was the only right reserved, as the trial court never ruled on the second motion. Further, Manning’s appeal makes no distinction between the two motions, but does set forth arguments based on Rodriguez, supra.
Arguably, based upon the entirety of the record, Manning believed that he maintained the right to some review of his second motion to suppress. This record contains at least some evidence that Manning’s plea was conditioned upon the right to review of both motions to suppress. Normally, a plea pursuant to State v. Crosby, supra, requires an explicit reservation of rights by the defendant, but Manning cannot reserve his right to *635 review a motion that was never ruled on by the trial court, and this court cannot review a ruling that was never made. Here, if Manning pled guilty under the mistaken belief that he would be entitled to appellate review of his Rodriguez claim, then the voluntariness of his plea is called into question.
In light of the ambiguous record made at the time of Manning’s plea, we remand this case to the trial court to determine whether Manning’s plea was conditioned upon his waiver of his second motion to suppress. The trial court should consider that Manning may not have understood that by pleading guilty at that time he was waiving review of the arguments urged in his second motion to suppress. Should the trial court find Manning lacked understanding of this matter, he should be allowed to either withdraw or maintain his plea, and obtain a hearing and ruling on his second motion to suppress before taking an appeal on the issue therein contained.
CONCLUSION
For the foregoing reasons, the trial court’s denial of David J. Manning’s initial pretrial motion to suppress is affirmed, and this matter is remanded to the trial court to determine Manning’s understanding of the rights he reserved when he pled guilty under State v. Crosby, supra.
AFFIRMED AND REMANDED FOR FURTHER PROCEEDINGS.

. The free air sniff of the exterior of the car by the canine officer was conducted approximately 24 minutes after the traffic stop began.